**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| YOU MAP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SNAP INC., ZENLY S.A.S., ZENLY INC., EVAN SPIEGEL, ANTOINE MARTIN, ALEXIS BONILLO, ALEXANDRE BERNARD, NICOLAS DANCIE, NOE LOTERMAN, NICOLAS FALLOURD, JONATHAN ETAIX, CHRISTOPHE KEREBEL and ROY MARMLESTEIN, | ) | C.A. No. 20-00162-CFC |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ZENLY S.A.S.'S AND FRENCH INDIVIDUAL DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

OF COUNSEL:

Carolyn Hoecker Luedtke
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105

Laura D. Smolowe
John B. Major
Anne K. Conley
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071

Matthew E. Fischer (#3092)
Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000

*Attorneys for Defendants Zenly S.A.S., Antoine Martin, Alexis Bonillo, Nicolas Dancie, Noe Loterman, and Nicolas Fallourd*

Dated: December 16, 2020

# TABLE OF CONTENTS

**Page**


I. SUMMARY OF ARGUMENT ........ 1

II. NATURE AND STAGE OF PROCEEDING ........ 3

III. STATEMENT OF FACTS ........ 4

A. YouMap ........ 4

B. Zenly's Alleged Misappropriation ........ 5

C. Plaintiff's Purported Trade Secrets ........ 6

IV. ARGUMENT ........ 6

A. Legal Standard ........ 6

B. Plaintiff Cannot Sue the French Defendants in Delaware ........ 7

1. This Court Lacks Personal Jurisdiction Over the French Defendants ........ 7

(a) General Jurisdiction ........ 7

(b) Specific Jurisdiction ........ 8

(c) Rule 4(k)(2) ........ 9

2. *Forum Non Conveniens* Requires Dismissal to France ........ 10

(a) France Provides an Adequate Alternative Forum ........ 11

(b) The Private and Public Interest Factors Favor Dismissal ........ 11

(i) Private Interest Factors ........ 12

(ii) Public Interest Factors ........ 13

C. Plaintiff's Claims Are Inadequately Pled on the Merits ........ 14

1. Plaintiff's Allegations About Zenly S.A.S. Are Insufficient ........ 14

2. Plaintiff's Trade Secret Claims Fail on the Merits ........ 15

(a) Plaintiff's Trade Secrets Are Not Alleged with Particularity ........ 15

(b) Plaintiff's "Trade Secrets" Were Publicly Disclosed ........ 17

**TABLE OF CONTENTS**
**(Continued)**

**Page**


3. The Remaining Counts Fail for Multiple Reasons ....................20
   (a) Counts II, III, V, VI, VII, and VIII Are Preempted........20
   (b) Plaintiff's Non-Trade Secret Claims Are Inadequate.......................................................................21

V. CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*10x Genomics, Inc. v. Celsee, Inc.*,
2019 WL 5595666 (D. Del. Oct. 30, 2019)....24

*A Star Grp. v. Manitoba Hydro*,
2014 WL 2933155 (S.D.N.Y. June 30, 2014)....23

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
631 F. Supp. 2d 504 (D. Del. 2009)....21

*Acuña-Atalaya v. Newmont Mining Corp.*,
— F. Supp. 3d —, 2020 WL 1154783 (D. Del. Mar. 10, 2020)....11

*Adtile Techs. Inc. v. Perion Network Ltd.*,
192 F. Supp. 3d 515 (D. Del. 2016)....10

*Adtile Techs. Inc. v. Perion Network Ltd.*,
2016 WL 3457152 (D. Del. June 23, 2016)....20

*Adverio Pharma GmbH v. Alembic Pharm. Ltd.*,
2019 WL 581618 (D. Del. Feb. 13, 2019)....2, 14

*In re Air Crash at Madrid, Spain*,
893 F. Supp. 2d 1020 (C.D. Cal. 2011)....14

*Alfadda v. Fenn*,
159 F.3d 41 (2d Cir. 1998)....12, 13

*Alta Bates Summit Med. Ctr. v. United of Omaha Life Ins.*,
2009 WL 57108 (N.D. Cal. 2009)....23

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006)....25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....22

*Banco Nominees Ltd. v. Iroquois Brands, Ltd.*,
748 F. Supp. 1070 (D. Del. 1990)....12

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Bos. Sci. Corp. v. Nevro Corp.*,
415 F. Supp. 3d 482 (D. Del. 2019)....................15, 16

*Chavez v. Dole Food Co.*,
836 F.3d 205 (3d Cir. 2016) ....................7

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009) ....................7, 8

*Dahl v. United Techs. Corp.*,
632 F.2d 1027 (3d Cir. 1980) ....................11, 13, 14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................7

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) ....................23

*Ethypharm S.A. France v. Bently Pharm., Inc.*,
388 F. Supp. 2d 426 (D. Del. 2005)....................21

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
623 F.3d 147 (3d Cir. 2010) ....................11, 12, 13, 14

*Flexible Techs., Inc. v. SharkNinja Operating LLC*,
2019 WL 1417465 (D. Del. Mar. 29, 2019) ....................16

*Lacey v. Cessna Aircraft Co.*,
932 F.2d 170 (3d Cir. 1991) ....................11

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
755 F. Supp. 635 (D. Del. 1991)....................20

*M2M Solutions LLC v. Telit Commc'ns PLC*,
2015 WL 4640400 (D. Del. Aug. 5, 2015)....................14

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Monsanto Co. v. Syngenta Seeds, Inc.*,
443 F. Supp. 2d 636 (D. Del. 2006)....................9, 10

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
2014 WL 4675316 (D. Del. Sept. 19, 2014)....................15

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014)....................21

*Novartis Pharm. Corp. v. Zydus Noveltech Inc.*,
2015 WL 4720578 (D. Del. Aug. 7, 2015)....................8

*Osco Motors Co. v. Marine Acquisition Corp.*,
2013 WL 2875374 (D. Del. June 24, 2014) ....................9

*Otor, S.A. v. Credit Lyonnais, S.A.*,
2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) ....................11

*Path to Riches LLC v. CardioLync, Inc.*,
290 F. Supp. 3d 280 (D. Del. 2018)....................10

*Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*,
42 F. Supp. 2d 423 (D. Del. 1999)....................9

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
632 F. Supp. 2d 362 (D. Del. 2009)....................24

**STATE CASES**

*Agilent Techs., Inc. v. Kirkland*,
2009 WL 119865 (Del. Ch. Jan. 20, 2009)....................22

*Bell Helicopter Textron, Inc. v. Arteaga*,
113 A.3d 1045 (Del. 2015) ....................14

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009) ....................23

# TABLE OF AUTHORITIES
**(Continued)**

**Page**

*Lipson v. Anesthesia Servs., P.A.*,
790 A.2d 1261 (Del. Super. Ct. 2001) ........................................ 22

*Miles Inc. v. Cookson Am., Inc.*,
1994 WL 676761 (Del. Ch. Nov. 15, 1994) ........................................ 18, 20

**STATE STATUTES**

6 Del. C. § 2007(a) ........................................ 20

6 Del. C. § 2007(b) ........................................ 21

## I. SUMMARY OF ARGUMENT

This lawsuit involves the alleged misappropriation of Plaintiff You Map, Inc.'s trade secrets in its social networking app, YouMap. Plaintiff claims that thirteen separate defendants, based in both the U.S. and France, devised a far-reaching conspiracy to misappropriate purported trade secrets incorporated into YouMap's design. Plaintiff claims the trade secrets were misappropriated by "Zenly"—an undifferentiated combination of Defendant Zenly S.A.S., a French corporation, and Defendant Zenly Inc., its U.S. subsidiary. The Complaint claims that nine "Zenly" employees (all named Defendants) accessed the trade secrets during a test of the YouMap app that YouMap advertised and made open to the public, and that the "Zenly" employees then somehow transmitted those trade secrets to Defendant Snap Inc., which months later acquired Zenly S.A.S.

Plaintiff initially served only the U.S.-based Defendants Zenly Inc., Snap Inc., and Snap's CEO Evan Spiegel (the "U.S. Defendants"), and they moved to dismiss in May 2020. That motion remains pending. Several months later, Plaintiff served some of the French Defendants—Zenly S.A.S., Antoine Martin, Alexis Bonillo, Nicolas Dancie, Noe Loterman, and Nicolas Fallourd (the "French Defendants"). Plaintiff's claims against the French Defendants, like their claims against the U.S. Defendants, should be dismissed.

To begin, Plaintiff's claims against the French Defendants should be dismissed because Plaintiff cannot sue the French Defendants in this Court. Plaintiff cannot establish that this Court has personal jurisdiction over the French Defendants given their lack of ties to Delaware. *Forum non conveniens* also favors allowing this France-centric lawsuit to proceed in France against the French Defendants.

Further, as with the U.S. Defendants, the Complaint as to the French Defendants fails on the merits. First, the Complaint does not articulate any concrete factual allegations as to Zenly S.A.S., instead lumping it together throughout the Complaint with Zenly Inc. That approach is improper. *Adverio Pharma GmbH v. Alembic Pharm. Ltd.*, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) (dismissing claims that "lump[ed] multiple defendants together"). Beyond that, the Complaint's trade secret claims (Counts I and II) are insufficient for two reasons: First, Plaintiff inadequately identifies its purported trade secrets, and second, public documents show those "trade secrets" were openly disclosed when YouMap advertised and made its app test open to the public. The Complaint's non-trade-secret claims are also subject to dismissal, either as preempted by Delaware's Uniform Trade Secrets Act, or inadequately pled, or both.

For all of these reasons, the Complaint should be dismissed with prejudice.

## II. NATURE AND STAGE OF PROCEEDING

Plaintiff filed the Complaint on January 31, 2020. (D.I. 1.) The Complaint includes nine claims, for (1) violation of the Defend Trade Secrets Act; (2) common law misappropriation of trade secrets; (3) unfair competition; (4) breach of contract; (5) unjust enrichment; (6) violation of California Business and Professions Code § 17200; (7) violation of Delaware's Uniform Deceptive Trade Practices Act; (8) tortious interference; and (9) violation of the Lanham Act. (*Id.*) All nine claims are brought against all thirteen Defendants. Plaintiff served the U.S. Defendants in February and April 2020. (D.I. 5, 11.) The U.S. Defendants moved to dismiss on May 1, 2020. (D.I. 13.) That motion is fully briefed and has been referred to Magistrate Judge Hall. (D.I. 22.) Plaintiff attempted to serve the French Defendants in early September 2020, and counsel accepted service on September 15, 2020. (D.I. 21.) The parties stipulated to extend the French Defendants' time to respond until December 16, 2020. (*Id.*) Plaintiff still has not served Defendants Alexandre Bernard, Jonathan Etaix, Christophe Kerebel, or Roy Marmlestein.

Before filing this Motion, Defendants' counsel raised the issues addressed herein with Plaintiff's counsel and asked that Plaintiff dismiss or amend its Complaint to avoid Defendants and this Court spending unnecessary time on a motion to dismiss. Plaintiff's counsel did not respond.

## III. STATEMENT OF FACTS

### A. YouMap

Plaintiff is the creator of YouMap, a social media app that allows users to make social media posts "on a real-time map." (Compl. ¶ 42.)

**Complaint, Figure 12**




(*Id.* ¶ 92 & Fig. 12.)

Plaintiff started building YouMap in 2015 (*id.* ¶ 43) along with Rally Interactive, its app developer (*id.* Ex. 1). In late 2016, Plaintiff began planning a public release of YouMap and issued "social media releases and other publicity." (*Id.* ¶¶ 2–3.) Those releases publicly disclosed YouMap's design:

**Exhibit D**




**Exhibit E**




(*See* D.I. 14-1 (RJN) Exs. A–M.)[1]

### B. <u>Zenly's Alleged Misappropriation</u>

Prior to releasing its final app, Plaintiff conducted "beta tests"—a common type of pre-release test that involves giving users access to a near-final version of the app. (Compl. ¶¶ 70–83.) Plaintiff allowed beta testers to use this version of YouMap to solicit feedback about the user experience. (*Id.*)

Plaintiff alleges that "Zenly," driven in part by the social media releases above, colluded to misappropriate Plaintiff's trade secrets. (*Id.* ¶¶ 2–3.) It alleges that Zenly did so by having nine employees sign up for the YouMap beta test. (*Id.* ¶¶ 70–83.) Plaintiff, however, nowhere alleges that Zenly employees accessed YouMap's source code or underlying technology. Instead, Plaintiff contends that the employees, by viewing the pre-release version of YouMap, learned about

---

[1] These media releases are referenced in the Complaint and properly subject to judicial notice. (*See* D.I. 14 (Request for Judicial Notice) ¶¶ 2–5.)

aspects of YouMap's design and later incorporated them into Zenly's app. (*Id.* ¶¶ 74–84, 99.) All of the Zenly employees were working in France at the time of the alleged misappropriation. (Declaration of Antoine Martin ("Martin Declaration") ¶ 3.)

Moreover, while Plaintiff alleges that "Zenly" misappropriated its trade secrets (Compl. ¶¶ 5, 74–83), it does not distinguish between Zenly S.A.S. and Zenly Inc. (*id.* at p. 1 (defining both as "Zenly")). Zenly S.A.S. is a French company and the creator of a different map-based social networking app. (*Id.* ¶ 27.) Zenly Inc. is a now-dissolved U.S. subsidiary of Zenly S.A.S. (*Id.* ¶ 28.)

### C. Plaintiff's Purported Trade Secrets

The Complaint attempts to identify a number of alleged trade secrets, including the "technology to automatically update users [sic] status to change symbolization representations of user actions by analyzing patterns in sensor data," and the "technology to rank," "visualize," and "animate" "stories on the map." (*Id.* ¶ 84.) The Complaint does not further define these terms. The Complaint also claims trade secrets in Plaintiff's "[g]eomarketing and promotion methodologies" and "[b]usiness and strategic plans." (*Id.*) Again, there is no definition.

## IV. ARGUMENT

### A. Legal Standard

To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

This pleading standard requires factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

### B. <u>Plaintiff Cannot Sue the French Defendants in Delaware</u>

#### 1. This Court Lacks Personal Jurisdiction Over the French Defendants

Plaintiff "bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "Personal jurisdiction over a defendant may be either general or specific." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). Plaintiff cannot meet its burden of showing either basis for jurisdiction over the French Defendants.

##### *(a) General Jurisdiction*

There is no plausible argument for general jurisdiction. Only a "limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* "[F]or a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"—generally, "where it is incorporated or has its principal place of business." *Id.* (citation omitted). Delaware is not that sort of forum for any of the French Defendants. Zenly S.A.S. is a French corporation based in Paris. (Compl. ¶ 27.) The Complaint also does

not allege that any of the French individual defendants reside in Delaware (and, in fact, all of the French individual defendants reside in France). (Compl. ¶¶ 30–38; Martin Declaration ¶ 3.)

*(b) Specific Jurisdiction*

Nor can Plaintiff establish specific jurisdiction over the French Defendants. Specific jurisdiction requires a "three-part inquiry," with jurisdiction appropriate only if (i) a defendant "purposefully directed [its] activities at [Delaware]," (ii) the litigation "'arise[s] out of or relate[s] to'" at least one of those activities, and (iii) "the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *D'Jamoos*, 566 F.3d at 102. The test requires that a defendant engage in "'a deliberate targeting of [Delaware].'" *Id.* at 103 (citation omitted).

That is not the case here. The Complaint nowhere alleges that any of the French Defendants purposefully directed activity towards Delaware (or had any contact with Delaware whatsoever). Indeed, the Complaint includes *no* Delaware-specific allegations about the French Defendants.

Plaintiff may claim that jurisdiction is appropriate based on alleged contacts between the French Defendants and YouMap relating to the YouMap beta. (Compl. ¶¶ 14–15.) But there is nothing about those allegations that has any connection to Delaware. And the mere fact that YouMap is a Delaware corporation is insufficient. *See Novartis Pharm. Corp. v. Zydus Noveltech Inc.*,

2015 WL 4720578, at *6 (D. Del. Aug. 7, 2015) (sending letter to "a Delaware corporation in another jurisdiction" insufficient).

Plaintiff also implies that jurisdiction is proper because there was a broad "conspiracy" between the U.S. Defendants and the French Defendants. (Compl. ¶ 39.) But to establish jurisdiction on that basis, Plaintiff must "assert specific factual evidence, not conclusory allegations," of a conspiracy, and show that "a substantial act or substantial effect in furtherance of the conspiracy occurred in [Delaware]." *Osco Motors Co. v. Marine Acquisition Corp.*, 2013 WL 2875374, at *10 (D. Del. June 24, 2014). Plaintiff includes no allegations of that sort—indeed, as stated above, the Complaint does not allege any action whatsoever in Delaware. *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 434–35 (D. Del. 1999) (no jurisdiction where plaintiff "fail[ed] to allege that the Defendants' action in furtherance of the alleged conspiracy to misappropriate . . . occurred in Delaware").

*(c) Rule 4(k)(2)*

Finally, Plaintiff also cannot establish personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). That provision provides for jurisdiction when a foreign defendant "lacks sufficient contacts with any single state to subject it to personal jurisdiction there" but has "sufficient aggregate contacts with the United States to comport with" due process. *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F.

Supp. 2d 636, 647 (D. Del. 2006). But Rule 4(k)(2) is "narrow" and applies only when a plaintiff "makes an affirmative representation that the defendant is not subject to the general jurisdiction of any state court." *Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 524 (D. Del. 2016); *Monsanto*, 443 F. Supp. 2d at 647 (no 4(k)(2) jurisdiction because plaintiff did not "satisf[y] its burden of proving the lack of state-specific contacts"). Plaintiff makes no such affirmative representation here.

### 2. *Forum Non Conveniens* Requires Dismissal to France

Even if this Court has jurisdiction over the French Defendants, which they respectfully submit it does not, the Court should separately dismiss on *forum non conveniens* grounds. This dispute has nothing to do with Delaware and everything to do with France. The alleged wrongdoing involved a French company, its employees based in France, and alleged misappropriation that occurred while they were in France. (Martin Declaration ¶¶ 2–3.) Dismissal in favor of a French forum is therefore appropriate.

*Forum non conveniens* "is a discretionary tool that empowers a district court 'to dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy.'" *Path to Riches LLC v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 285 (D. Del. 2018) (citation omitted). To determine whether dismissal is appropriate, a defendant must establish "two basic

elements"—first, "that an adequate alternative forum exists," and second, "that the private and public interest factors weigh heavily in favor of dismissal." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). Both elements are satisfied here.

*(a) France Provides an Adequate Alternative Forum*

Courts have repeatedly deemed the French legal system adequate to adjudicate all manner of disputes. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010) (France is adequate alternative forum); *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 WL 2613775, at *4 (S.D.N.Y. Sept. 11, 2006) (same). Accordingly, France is an adequate alternative forum so long as the French Defendants are willing to "stipulate to service of process and consent to jurisdiction in [France]." *Acuña-Atalaya v. Newmont Mining Corp.*, — F. Supp. 3d —, 2020 WL 1154783, at *4 (D. Del. Mar. 10, 2020); *see Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980) (element satisfied where defendant "expressly consented to personal jurisdiction"). The French Defendants are willing to consent to French jurisdiction. France is therefore an adequate alternative forum.

*(b) The Private and Public Interest Factors Favor Dismissal*

Because "another forum is adequate (and available) to hear the case, the focus . . . shifts to the private and public interest factors." *Lacey*, 932 F.2d at 180.

(i) Private Interest Factors

The private interest factors include, as relevant here, "[i] the relative ease of access to sources of proof; [ii] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and [iii] all other practical problems that make trial of a case easy, expeditious and inexpensive." *Eurofins*, 623 F.3d at 161.

These factors favor dismissal and further proceedings in France. Access to proof favors France because the core alleged misconduct was by a French corporation and its French employees, involving an app designed in France and alleged misappropriation that occurred in France. (Martin Declaration ¶¶ 2–3.) All of the key witnesses and evidence are therefore in France, and there is *no* relevant evidence in Delaware. *Banco Nominees Ltd. v. Iroquois Brands, Ltd.*, 748 F. Supp. 1070, 1073, 1075 (D. Del. 1990) (finding that access to proof factor "strongly favors dismissing the case" where "there are no witnesses or evidence in Delaware"). Availability of compulsory process also favors a French forum—given this case's extensive ties to France, there will likely be a number of French witnesses outside of the Court's subpoena power. *See Alfadda v. Fenn*, 159 F.3d 41, 47 (2d Cir. 1998) ("[C]ompulsory process is available in France to secure the live testimony of necessary foreign witnesses outside the reach of United States process."). Finally, litigating this lawsuit in Delaware will create other practical

problems, including travel burdens, translation costs, and other logistical hurdles. *Id.* (noting travel costs "will be significantly lessened if trial is held in France because almost all the entities involved are based there"); *Dahl*, 632 F.2d at 1031 (need for "translation of documents" would present "major practical problem").

(ii) Public Interest Factors

The public interest factors include "[i] the administrative difficulties flowing from court congestion; [ii] the 'local interest in having localized controversies decided at home'; [iii] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [iv] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [v] the unfairness of burdening citizens in an unrelated forum with jury duty." *Eurofins*, 623 F.3d at 162.

These factors, too, favor dismissal, because Delaware has no interest in this lawsuit. Plaintiff's claims focus on a French company and its French employees, regarding misappropriation that allegedly occurred in France. (Martin Declaration ¶¶ 2–3.) The Complaint alleges no activity, contact, or communication that took place in Delaware, nor does it reference any witness with any physical connection to Delaware. Delaware's sole connection is that Snap and Zenly Inc., against which there are no factual allegations, were incorporated in Delaware. There is therefore no "local interest" in this lawsuit, nor is there any reason to "burden"

Delaware citizens with it. *Eurofins*, 623 F.3d at 162; *Dahl*, 632 F.2d at 1032 (affirming dismissal in part because "only contact that Delaware has with this case" is as defendant's "state of incorporation").

Allowing this case to proceed in Delaware will also likely create choice-of-law issues. Because of this case's extensive ties to France, the Court will be forced to determine whether to apply French law to some or all aspects of Plaintiff's claims. *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015) (Delaware courts apply law of forum with "most significant relationship"). The "mere likelihood or possibility" of that issue "weighs in favor of dismissal." *In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d 1020, 1040 (C.D. Cal. 2011).

### C. Plaintiff's Claims Are Inadequately Pled on the Merits[2]

#### 1. Plaintiff's Allegations About Zenly S.A.S. Are Insufficient

Plaintiff's Complaint fails as to Zenly S.A.S. because it does not sufficiently allege Zenly S.A.S.'s role in any misconduct. Courts have repeatedly held that "allegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard." *Adverio*, 2019 WL 581618, at *6; *M2M Solutions LLC v. Telit Commc'ns PLC*, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015) (complaint

[2] Many of the French Defendants' merits arguments here are similar (or nearly identical) to arguments raised in the U.S. Defendants' pending Motion. (D.I. 13.) The French Defendants repeat these arguments here for the sake of completeness.

insufficient where party "group[ed] Telit UK and Telit U.S. under an umbrella term 'Telit'"). Group pleading is "problematic" because treating defendants "as one big group for purposes of articulating" claims "says nothing plausible as to what any particular one of them might have done." *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, 2014 WL 4675316, at *7 (D. Del. Sept. 19, 2014).

That is the case here with respect to Zenly S.A.S. The Complaint makes *no* individualized allegations against Zenly S.A.S. Instead, the Complaint refers to Zenly S.A.S. and its U.S. subsidiary, Zenly Inc., "together" as "Zenly," without ever distinguishing between them. (Compl. p. 1.) That approach is improper, and Zenly S.A.S. should be dismissed for that reason alone.

**2. Plaintiff's Trade Secret Claims Fail on the Merits**

Plaintiff's trade secret claims (Counts I and II) should also be dismissed.

*(a) Plaintiff's Trade Secrets Are Not Alleged with Particularity*

A plaintiff must plead a trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 496 (D. Del. 2019) (trade-secret definition sufficient where trade secrets were defined as specific matters within identified confidential documents). Put another way, a plaintiff "must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a

court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (particularity requirement satisfied where plaintiff disclosed confidential technical drawings that contained trade-secret know-how).

Plaintiff has not met that standard. This is not a case involving a narrow type of know-how, *compare id.* at *2, or specific confidential documents, *Nevro*, 415 F. Supp. 3d at 496. Rather, Plaintiff's trade secrets appear to encompass all visual aspects of YouMap. (*See* Compl. ¶¶ 46–59 & Ex. 1.) That approach fails to adequately define which aspects of YouMap are trade secrets.

Plaintiff purports to define its trade secrets in Paragraph 84. Many of the trade secrets are vaguely and confusingly described "technologies," such as the "technology to analyze social cues and display those cues as aggregated social patterns," and the "technology" to "rank," "visualize," and "animate" "stories on a map." (Compl. ¶ 84.) But Plaintiff never defines "technology"—*i.e.*, whether it is YouMap's source code, visual design, algorithms, or something else. Plaintiff also never defines "sensor data," "aggregated social patterns," or "social cues," leaving Defendants and the Court to guess at their meaning. Some alleged trade secrets—like the "technology to automatically update users [sic] status to change symbolization representations of user actions by analyzing patterns in sensor data"—are incomprehensible.

The remainder of the Complaint does not clarify these purported trade secrets. Plaintiff claims to have solved an "industry-wide problem" of overlapping content on a small mobile screen. Plaintiff boasts it solved this problem with "post bubbles" and "MapMoji" icons. (Compl. ¶¶ 46–55, 67, Figs. 6–9.) Plaintiff, though, did not invent "post bubbles" or emojis. Acknowledging that reality, Plaintiff intersperses confusing descriptions of its purported technology in an attempt to concoct a trade secret, such as having a "passive retrieval method dependent on both macro- and micro- relevance analysis." (*Id.* ¶ 58.) This description makes no sense and says nothing about what the "method" or "analysis" is. The combination of vagueness and incoherence makes it impossible for Defendants (or the Court) to evaluate the trade secrets and renders Plaintiff's trade-secret definitions insufficient.

Plaintiff also claims protection for generic "[g]eomarketing and promotion methodologies" and "[b]usiness and strategic plans." (Compl. ¶ 84.) The Complaint never defines "methodologies" or "plans," nor does it explain how Defendants accessed them. Those trade secrets, too, are inadequately pled.

*(b) Plaintiff's "Trade Secrets" Were Publicly Disclosed*

Separately, Plaintiff's trade secret claims fail because they depend on information that Plaintiff publicly disclosed.

One reason that trade secrets must be defined with particularity is to distinguish them from matters in the public sphere. Here, Plaintiff's inadequate trade-secret descriptions makes them indistinguishable from public media releases about YouMap. This disclosure is fatal to Plaintiff's trade secret claims. *See Miles Inc. v. Cookson Am., Inc.*, 1994 WL 676761, at *11 (Del. Ch. Nov. 15, 1994).

Documents subject to judicial notice show that Plaintiff publicly revealed its "trade secrets" when advertising YouMap. For example, Plaintiff claims as a trade secret the "technology to visualize stories on a map." (Compl. ¶ 84.) But in October 2016—months before Zenly employees allegedly accessed the YouMap beta—Plaintiff's developer, Rally Interactive, showcased those technologies to the public:

**Exhibit D**




**Exhibit E**



**Exhibit F**




**Exhibit G**




(D.I. 14-1 (RJN) Exs. A–M.) These releases bear striking similarity to the screenshots Plaintiff says "identif[y] the technology" Defendants misappropriated:

**Complaint, Figure 7**




**Complaint, Figure 12**




**Complaint, Figure 13**




(Compl. ¶ 55, 92–94 & Figs. 7, 12–13.)

The releases therefore destroy Plaintiff's ability to claim these "technologies" as trade secrets. *See Miles Inc.*, 1994 WL 676761, at *11. That subjects Plaintiff's trade-secret claims to dismissal. Separately, the releases underscore the insufficiency of Plaintiff's trade-secret definitions—another reason for dismissal. *Adtile Techs. Inc. v. Perion Network Ltd.*, 2016 WL 3457152, at *3 (D. Del. June 23, 2016) (trade secrets must exclude "exclude . . . publically available" material).

### 3. The Remaining Counts Fail for Multiple Reasons

For all of the above reasons, Counts I and II fail. The remainder of the Complaint is also legally insufficient. Counts II, III, V, VI, VII, and VIII are preempted. In addition to being preempted, they fail to state a claim. The only remaining Counts—Counts IV and IX—likewise fail to state a claim.

#### *(a) Counts II, III, V, VI, VII, and VIII Are Preempted*

Delaware's Uniform Trade Secrets Act ("DUTSA") "displaces conflicting tort, restitutionary and other law of [Delaware] providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a). The statute preempts all "other tort causes of action founded on allegations of . . . misappropriation." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636–37 (D. Del. 1991). "A claim will be preempted if it is 'grounded in the same facts which

purportedly support the [misappropriation] claim.'" *Ethypharm S.A. France v. Bently Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005).

Preemption applies even if the information at issue does not qualify as a trade secret, *id.*, and even if a party does not assert a Uniform Trade Secrets Act claim, *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 840 (N.D. Cal. 2014) (rejecting argument that "preemption does not apply because [party] did not plead a CUTSA claim"). Preemption also applies even if claims have different legal elements, so long as they are "grounded in the same facts." *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009).

Here, DUTSA preempts all but three of Plaintiff's claims, because they are all "founded on allegations of trade secret misappropriation."[3] Indeed, Counts II, III, V, VI, VII, and VIII all rest on factual allegations focused entirely on alleged misappropriation. (*See* Compl. ¶¶ 104–152.)

*(b) Plaintiff's Non-Trade Secret Claims Are Inadequate*

Plaintiff's non-trade-secret claims are inadequately pled. The Complaint includes those claims seemingly as an afterthought, without any effort to plead a factual basis for them. "Rule 8 does not empower respondent to plead the bare

---

[3] Only three claims avoid preemption—Count I under the federal trade secret statute and Count IX under the Lanham Act, because of the Supremacy Clause; and Count IV for breach of contract, which is carved out of the preemption provision, 6 Del. C. § 2007(b).

elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). These claims therefore fail. That includes the preempted claims, discussed above, as well as the only remaining non-preempted claims (Counts IV and IX).

*Unfair Competition and Tortious Interference (Counts III and VIII)*: Plaintiff's unfair competition and tortious interference claims are inadequate. For both claims, Plaintiff must establish "a reasonable probability of a business opportunity," by identifying "a specific party who was prepared to enter into a business relationship." *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *6–7 (Del. Ch. Jan. 20, 2009). Plaintiff, though, provides just a vague assertion that Defendants interfered with its "expectancy of . . . a valid business relationship" with unnamed users. (Compl. ¶¶ 120, 143.) That is not enough. *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1285–86 (Del. Super. Ct. 2001) ("mere 'perception' of a prospective business relationship" insufficient).

*Breach of Contract (Count IV)*: Plaintiff's breach of contract claim also fails. Plaintiff alleges that Defendants breached the underlying contract—the YouMap beta terms of service—by "steal[ing] YouMap's non-public, proprietary and confidential" information. (Compl. ¶ 74.) But as discussed above, Plaintiff's Complaint does not identify any "non-public, proprietary and confidential" information; it rests entirely on publicly disclosed visual aspects of YouMap. *See*

*supra* 17–20. Plaintiff's breach-of-contract claim therefore fails. *See A Star Grp. v. Manitoba Hydro*, 2014 WL 2933155, at *6 (S.D.N.Y. June 30, 2014) (claim dismissed because information was not confidential); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227–28 (9th Cir. 1997) (claim failed where party had publicly disclosed information).

*Unjust Enrichment (Count V)*: Plaintiff's unjust enrichment claim fails because Plaintiff alleges that a contractual agreement governed the relationship between the parties. "When the complaint alleges an express, enforceable contract that controls the parties' relationship, . . . a claim for unjust enrichment will be dismissed." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891–92 (Del. Ch. 2009).

*California Business & Professions Code (Count VI)*: Plaintiff's Business and Professions Code claim is inadequate because Plaintiff "must plead the specific rubric under which the proscribed conduct falls," *i.e.*, fraud, unlawfulness, or unfair conduct. *Alta Bates Summit Med. Ctr. v. United of Omaha Life Ins.*, 2009 WL 57108, at *3 (N.D. Cal. 2009). Plaintiff has failed to do so, instead vaguely alleging Defendants engaged in "unlawful, unfair and/or fraudulent business acts," without defining those acts or explaining how those alleged "acts" are different from trade secret misappropriation. If the acts alleged are the taking of trade secrets, then the claim is preempted as discussed above. (*See* Compl. ¶¶ 136–38.)

*Delaware Uniform Deceptive Trade Practices Act ("DUDTPA") (Count VII)*: Plaintiff's DUDTPA claim fails because it does not identify specific wrongful conduct by the French Defendants that violated the statute. Instead, the claim lists the statute's elements verbatim and references plainly inapplicable language, such as language regarding "deceptive representations of . . . geographic origin." (Compl. ¶ 140.) By not identifying specific wrongful conduct, Plaintiff fails to demonstrate how the French Defendants violated the statute.

*Lanham Act (Count IX)*: Finally, Plaintiff's Lanham Act claim fails. As an initial matter, Plaintiff's Complaint does not "include 'sufficiently detailed allegations regarding the nature of [any] alleged falsehood,'" nor does it allege any falsehood specifically by the French Defendants. *See 10x Genomics, Inc. v. Celsee, Inc.*, 2019 WL 5595666, at *5 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, 2019 WL 6037558 (D. Del. Nov. 14, 2019) (citation omitted). Instead, Plaintiff merely alleges that all Defendants made unspecified "statements about their respective mobile applications," without saying what those statements were. (Compl. ¶ 148.) Further, Plaintiff's claim appears to rest on allegations of "'false attribution of the authorship,' of an invention," which are "not actionable." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 366–67 (D. Del. 2009) (dismissing claim based on allegedly false "statement that [party] developed a frameless windshield wiper blade").

## V. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint as to the French Defendants. Because Defendants' counsel raised the arguments in this Motion through meet and confer, yet Plaintiff declined to amend its Complaint, the Complaint should be dismissed with prejudice. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (court may deny leave to amend based on "equitable considerations").

POTTER ANDERSON & CORROON LLP

By: */s/ Jonathan A. Choa*
Matthew E. Fischer (#3092)
Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
mfischer@potteranderson.com
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendants Defendants Zenly S.A.S., Antoine Martin, Alexis Bonillo, Nicolas Dancie, Noe Loterman, and Nicolas Fallourd*

OF COUNSEL:

Carolyn Hoecker Luedtke
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000

Laura D. Smolowe
John B. Major
Anne K. Conley
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100

Dated: December 16, 2020

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Opening Brief in support of the Motion to Dismiss complies with the Court's standing order dated November 6, 2019 regarding briefing in all cases. The Motion to Dismiss has been prepared using 14-point Times New Roman font and contains 4,992 words, excluding the case caption, tables of contents and authorities, signature blocks, and certificates.

*/s/ Jonathan A. Choa*
Jonathan A. Choa (#5319)