**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

YOU MAP, INC.,                    )
                                      )
               Plaintiff,        )
                                        )
     v.                                )
                                        )    C.A. No. 20-00162-CFC
SNAP INC., ZENLY S.A.S., ZENLY INC.,  )
EVAN SPIEGEL, ANTOINE MARTIN,    )
ALEXIS BONILLO, ALEXANDRE       )
BERNARD, NICOLAS DANCIE, NOE     )
LOTERMAN, NICOLAS FALLOURD,     )
JONATHAN ETAIX, CHRISTOPHE      )
KEREBEL and ROY MARMELSTEIN,   )
                                          )
              Defendants.     )
_____ )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff You Map, Inc. ("Plaintiff" or "You Map") filed this suit against three corporate entities and ten individuals, alleging trade secret misappropriation, breach of contract, and other claims. (D.I. 1.)

Plaintiff developed a mobile app called YouMap that uses a novel visualization to display a map of what is happening in a particular area. In late 2016 and early 2017, some of the individual defendants signed up to be beta testers of the YouMap app. Unbeknownst to Plaintiff, those individuals were employed by either Defendant Zenly S.A.S. or Defendant Zenly Inc. (though the Complaint doesn't specify which).

The Complaint is short on well-pleaded allegations about what happened next, but the gist of the story is that the individual defendants used their status as beta testers to access You Map's "technologies," which they then incorporated into Zenly's mobile app. Zenly S.A.S. was

subsequently acquired by Defendant Snap Inc., and Snap Inc. also allegedly incorporated the stolen "technologies" into its Snapchat mobile app.

Pending before the Court is a motion to dismiss filed by Snap Inc., Zenly Inc., and Evan Spiegel pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (D.I. 12.)  The motion is fully briefed.  (D.I. 13; D.I. 16; D.I. 17.)  Also pending is Snap Inc.'s, Zenly Inc.'s and Spiegel's request for judicial notice of certain documents referenced in their motion to dismiss.  (D.I. 14.)  For the reasons discussed below, I recommend that the Court GRANT the request for judicial notice and GRANT the motion to dismiss.

## I.     BACKGROUND[1]

Plaintiff You Map developed and offered a mobile application ("app") called YouMap. (D.I. 1 ("Compl.") ¶¶ 1, 40.)   YouMap allows users to share and view information about geographical locations on an interactive map.  (*Id.* ¶ 40.)  YouMap has an "adaptive visualization system" that displays visual and textual information in "post bubbles," which appear and disappear based on available screen space as a user zooms in and out.  (*Id.* ¶¶ 46-53.)  YouMap displays post bubbles in combination with "density visualization" (or "heat maps"), which alerts the user to the presence of more content that can be visually displayed.  (*Id.* ¶¶ 54-55.)  YouMap also employs a "ranking and relevancy system" to determine which content to display at different zoom levels. (*Id.* ¶¶ 57-58.)

Defendant Zenly Inc. was a Delaware corporation and a subsidiary of Defendant Zenly S.A.S., a French limited liability company.  (*Id.* ¶¶ 27-28; D.I. 18.)  Zenly Inc. was dissolved in May 2017 when Zenly S.A.S. was acquired by Defendant Snap Inc. ("Snap").  (Compl. ¶¶ 20, 99;

---

[1] I assume the facts alleged in the Complaint to be true for purposes of resolving the motion to dismiss for failure to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

D.I. 18; D.I. 26.)   According to the Complaint, "Zenly" developed, and makes available for download, a mobile mapping application called Zenly ("Zenly app").[2]  (Compl. ¶¶ 2, 4, 5, 90, 100.)  The Zenly app allows users to locate other users on a map.  (*Id.*)

In the summer of 2016, Plaintiff made its YouMap app available for beta testing, upon request, to select users.  (*Id.* ¶ 70.)  To participate in the beta test, the users were required to accept Plaintiff's terms and conditions, which included confidentiality, non-use, and nondisclosure obligations.  (*Id.* ¶¶ 19, 70-73.)  The beta testers "also agreed to not: '(a) modify, reverse engineer, decompile, or disassemble [YouMap]; (b) rent, lease, loan, sell, sublicense, distribute, transmit, or otherwise transfer [YouMap]; (c) make any copy of or otherwise reproduce [YouMap]; or (d) display [YouMap] to unauthorized third parties without [You Map's] authorization.'"  (*Id.* ¶ 73.)  Plaintiff refused to allow individuals employed by its competitors to participate in the beta test. (*Id.* ¶ 18.)

In November 2016, Defendant Antoine Martin, a co-founder and the President of "Zenly," sent an e-mail to Plaintiff and asked if Zenly employees could participate in the beta test of YouMap.  (*Id.* ¶¶ 14-16.)  According to the Complaint, "[Plaintiff] did not respond to, nor was it made aware of during the relevant period, that email."  (*Id.* ¶ 15.)  Subsequently, six Zenly employees—Defendants Nicolas Dancie, Noe Loterman, Nicolas Fallourd, Jonathan Etaix, Christophe Kerebel, and Roy Marmelstein—requested access to the beta version of YouMap and, on February 1, 2017, were approved and received access.  (*Id.* ¶¶ 77-82.)  Some of those employees

---

[2] The Complaint collectively defines Zenly Inc. and Zenly S.A.S. as "Zenly."  Where I am able to discern from the Complaint which defendant is alleged to do what, I will refer to the appropriate entity.  If I cannot tell, I will use the term "Zenly."  To avoid additional confusion, I will refer to the Zenly mobile application as the "Zenly app."

used an alias and/or a personal e-mail address to hide the fact that they worked for Zenly.  (*Id.* ¶¶ 18, 77-82.)

Plaintiff contends that the reason why Zenly employees sought to participate in the beta test of YouMap was so that Zenly could "steal" Plaintiff's "technology" and incorporate it into the Zenly app.  (*Id.* ¶ 16.)  According to the Complaint, Zenly was motivated to steal from Plaintiff because the Zenly app was, at that time, "behind the technology curve."  (*Id.*)  The Complaint alleges that Zenly wanted to improve the Zenly app to make Zenly more attractive for a potential acquisition by Snap.  (*Id.* ¶¶ 6-13, 89-90, 99.)

Defendant Snap is a Delaware corporation that developed, and makes available for download, a social media app called Snapchat.  (*Id.* ¶¶ 2, 26.)  Snapchat did not have a mapping feature before Snap acquired Zenly S.A.S. in May 2017.  (*Id.* ¶¶ 55, 90, 98.)  After the acquisition, in June 2017, Snapchat released an update containing a location-sharing feature called Snap Map.  (*Id.* ¶¶ 2, 98.)  At some point, Zenly also released an update to the Zenly app (though the Complaint doesn't specify when).  (*Id.* ¶¶ 2, 20.)  According to the Complaint, the updates to Snapchat and the Zenly app "incorporated . . . technologies" that were "stolen" from You Map.  (*Id.* ¶¶ 2, 3, 20.)

The Complaint alleges that the "stolen technologies"

> includ[e] but [are] not limited to the following
>
> a.    The technology to automatically update users['] status to change symbolization representations of user actions by analyzing patterns in sensor data.
>
> b.    The technology to rank stories on the map.
>
> c.    The technology to visualize stories on a map.
>
> d.    The technology to animate stories on a map.
>
> e.    The technology to analyze social cues and display those cues as aggregated social patterns.

        f.      Geomarketing and promotion methodologies.

        g.      Business and strategic plans, marketing channels and customer segments.

(*Id.* ¶ 84.)   The Complaint also contains a number of screenshots purportedly showing that Snapchat's updated Snap Map user interface utilizes the same "visualization system and density aggregation tools" as YouMap, despite the fact that the Zenly app did not employ that functionality prior to Snap's acquisition of Zenly.  (*Id.* ¶¶ 89, 92, 94, 97.)

The Complaint alleges additional facts that, according to Plaintiff, suggest that Zenly and Snap had—even before the acquisition—concocted a "plan" to steal Plaintiff's "technologies." (*Id.* ¶¶ 2, 17, 99.)  The Complaint alleges that Snap's previous attempt to add a mapping function to Snapchat "had not been developed to [the] satisfaction" of Snap's CEO, Defendant Evan Spiegel, and that he "directed Snap to investigate the market to purchase the technology its own developers were unable to perfect."  (*Id.* ¶ 6.)  The Complaint further alleges that Snap and Zenly had a common investor that had a financial incentive in Snap's acquisition of Zenly S.A.S.  (*Id.* ¶¶ 5-13, 99.)

The Complaint also asserts that, prior to the acquisition, "on, or in the days leading up to, November 15, 2016" (which was the day before Defendant Martin e-mailed You Map), "Zenly and its representatives had met with Snap and its representatives . . . to discuss YouMap, YouMap's technologies, the Beta Testing *and/or* updating the technologies in [the Zenly app]."  (*Id.* ¶ 17 (emphasis added).)   But the Complaint does not specify which of those topics was actually discussed, leaving open the possibility that YouMap was not discussed at all.  And the only facts alleged to support the assertion are the following: "Mr. Fallourd [Zenly's Senior Product Designer and Product Manger] tweeted on November 15, 2016, a picture of Snap's Spectacles—before they were available for online purchase—against a backdrop picture of 'Zenly,' captioned: 'Guess

what's happened today?' including hashtags of, among others, #snapchat #zenly #app #tech #fomo." (*Id.*) The Complaint further alleges that, on "December 10, 2016, Defendant Fallourd publicly posted on social media . . . a photo of a Christmas tree ornament that was Snap's SNAPCHAT ghost logo with various hashtags," which, according to Plaintiff, "evidences Zenly's and Snap's working together to misappropriate YouMap's technologies." (*Id.* ¶ 79.)

According to the Complaint, the Snapchat and Zenly updates incorporating the "stolen technologies" were "rushed . . . into the market, beating [You Map's] release of [YouMap in July 2017] by several days." (*Id.* ¶¶ 2, 3, 20.) The Complaint alleges that, "[w]ith that, Snap and Zenly obtained a tremendous head start over YouMap, damaging YouMap in the process and otherwise gaining market share, steering public sentiment in their favor on YouMap's vision and technology, and misappropriating goodwill and critical acclaim by telling the market Snap and Zenly had developed the technologies they stole from YouMap." (*Id.* ¶ 3.)

The Complaint contains nine counts: violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count I), "common law" misappropriation of trade secrets (Count II), unfair competition (Count III), breach of contract (Count IV), unjust enrichment (Count V), violation of the California Business & Professions Code § 17200 (Count VI), violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531, *et seq.* (Count VII), tortious interference with business relationships and prospects (Count VIII), and violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count IX). (Compl. ¶¶ 104-52.)

On May 1, 2020, Defendants Snap Inc., Zenly Inc., and Evan Spiegel (collectively, "Moving Defendants") filed the pending motion to dismiss.[3] (D.I. 12.) Moving Defendants

---

[3] At that time, Plaintiff had not yet served any of the other defendants. Plaintiff has now served some of the remaining defendants. (*See* D.I. 24 at 1.)

contend that You Map's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In addition, Defendant Spiegel contends that the Complaint should be dismissed as to him under Rule 12(b)(2) for lack of personal jurisdiction. Contemporaneously with their motion to dismiss, Moving Defendants filed a motion styled "Request for Judicial Notice," asking that the Court take notice of certain publicly available social media posts.  Plaintiff filed an Answering Brief purporting to respond to both motions (D.I. 16), and Moving Defendants filed a Reply Brief in support of their motion to dismiss (D.I. 17).

## II.   LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A possibility of relief is not enough.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not.  *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal marks omitted).

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Although Rule 8 does not require a plaintiff to set forth

in the complaint "the grounds upon which the court has personal jurisdiction over the defendant," *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995), "once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper," *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  But if the district court does not hold an evidentiary hearing, the court should resolve any factual disputes in the plaintiff's favor and should deny the motion if the plaintiff's evidence establishes "a prima facie case of personal jurisdiction."  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

## III.   DISCUSSION

### A.   Moving Defendants' Request for Judicial Notice

Moving Defendants' request for judicial notice asks the Court to consider thirteen publicly available social media posts in connection with Moving Defendants' motion to dismiss.  The posts, dated between May and October 2016, were purportedly communicated to the public by Rally Interactive, the app developer that Plaintiff worked with on YouMap.  (Compl. ¶ 64, Ex. 1; D.I. 14, Ex. A-M.)  Defendants argue that the Court may consider the posts because they are "explicitly referenced" in Paragraph 3 of the Complaint, which alleges that Defendants knew about YouMap's impending public release from "YouMap's social media releases and other publicity."  (D.I. 14 ¶ 4; Compl. ¶ 3.)  According to Defendants, the posts demonstrate that Plaintiff had already disclosed to the public the same visual aspects of YouMap's user interface that Plaintiff contends were "stolen" by Defendants months later.  (D.I. 13 at 16-19.)

Plaintiff's Answering Brief purports to respond to both the motion to dismiss and the request for judicial notice,[4] but Plaintiff has not opposed Defendants' request that the Court take judicial notice of the social media posts.  (D.I. 16 at 12-14.)  Accordingly, I recommend that the Court grant Moving Defendants' request for judicial notice.

### B.     Personal Jurisdiction over Spiegel

Spiegel argues that the Court lacks personal jurisdiction over him.  To exercise personal jurisdiction over a defendant, a court generally must answer two questions, one statutory and one constitutional.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 78 F. Supp. 3d 572, 580 (D. Del. 2015), *aff'd*, 817 F.3d 755 (Fed. Cir. 2016).  The statutory inquiry requires the court to determine whether jurisdiction over the defendant is appropriate under the long-arm statute of the state in which the court is located.  *IMO Indus.*, 155 F.3d at 259.  The constitutional inquiry asks whether exercising jurisdiction over the defendant comports with the Due Process Clause of the U.S. Constitution.  *Id.* Due Process is satisfied where the court finds the existence of "certain minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A defendant's "contacts" with the forum state can give rise to "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).  But the requirement that a court have personal jurisdiction is a

---

[4] *See* D.I. 16 ("Plaintiff's Omnibus Answering Brief in Opposition to Defendants Snap Inc.'s, Zenly Inc.'s and Evan Spiegel's Motion to Dismiss and Request for Judicial Notice").

9

"waivable right," and a defendant may consent to the jurisdiction of the court.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *see also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.").

Spiegel contends that the Court lacks general jurisdiction over him because he is a California resident.  (Compl. ¶ 29.)  He further contends that he is not alleged to have taken an action in Delaware that would subject him to specific jurisdiction here.  Spiegel points out that the only allegations about him are that (1) he is a resident of California and (2) he "directed Snap to investigate the market to purchase the technology its own developers were unable to perfect." (Compl. ¶¶ 6, 29.)

Plaintiff's response to Spiegel's motion does not include any affidavits or other evidence to establish personal jurisdiction over Spiegel.  Instead, Plaintiff points to Delaware's officer consent statute, 10 Del. C. § 3114(b).  That statute provides, in pertinent part, that Delaware courts may exercise personal jurisdiction over nonresident officers of a corporation in "all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such officer is a necessary or proper party."  *Id.*  Plaintiff points out that this is an action "against" Snap. And Plaintiff contends that Spiegel is a "proper" party "because: (i) he has a tangible legal interest in the dispute which is separate from Snap" (an assertion for which Plaintiff provides zero factual or legal support); "(ii) the claims against [Spiegel] arise out of the same facts and occurrences as the claims against Snap" (an assertion that is impossible to assess due to the dearth of allegations against Spiegel); "and (iii) it serves judicial economy to consider those claims together."  (D.I. 16 (Plaintiff's Answering Br.) at 21 (citing *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 289-90 (Del. 2016)).)  Plaintiff further argues that exercising jurisdiction over Spiegel satisfies due process

because § 3114 constitutes explicit notice to officers of Delaware corporations that, by accepting such positions, they consent to jurisdiction in Delaware for claims that fall under § 3114.

It would be an interesting academic exercise to fully explore the circularity of Plaintiff's argument, but it is unnecessary to resolve this dispute. Section 3114 does not apply. Spiegel is not a "proper" party within the meaning of § 3114 because he is not alleged to have done anything that would subject him to liability. To the extent Plaintiff contends that § 3114 permits personal jurisdiction over a nonresident officer of a Delaware corporation whenever the corporation is also named as a defendant, Plaintiff has provided no support for that proposition, and I am unaware of any.

The *Hazout* case, cited by Plaintiff, is not to the contrary. In that case, the Delaware Supreme Court made clear that a corporate officer is a "proper" party within the meaning of § 3114 "only . . . when [the officer] faces claims that arise out of his exercise of his corporate powers." 134 A.3d at 279; *see also id.* at 289 (holding that § 3114 requires "a close nexus between the claims involving the corporation which made it a party to the suit, and the conduct of the nonresident fiduciary"); *id.* at 289-90 ("'[P]roper' parties appear before a court because they have a separable legal interest in the suit."). In this case, Plaintiff does not allege that Spiegel is liable as a result of his wrongful exercise of corporate powers. Rather, Plaintiff appears to contend that Spiegel is a proper defendant because he is an officer of corporation that is alleged to be liable. That is not the same thing.

The claims against Spiegel should be dismissed for lack of personal jurisdiction.

## C.     Defend Trade Secrets Act Claim (Count I)

Moving Defendants argue that the Defend Trade Secrets Act claim (Count I) should be dismissed because the Complaint fails to sufficiently identify the trade secrets alleged to have been misappropriated. Under the particular circumstances here, I agree.

11

The Defend Trade Secrets Act of 2016 (DTSA) provides, in relevant part, that "[a]n owner of a trade secret that is misappropriated may bring a civil action" to obtain damages and injunctive relief.  18 U.S.C. § 1836(b)(1), (3).  The DTSA defines "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value" from not being generally known or readily ascertainable.  18 U.S.C. § 1839(3).  To plead misappropriation of a trade secret under the DTSA, "a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur."  *Flexible Techs., Inc. v. SharkNinja Operating LLC*, Civil Action No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (citation omitted).

As explained above, the Complaint lists various "technologies" that were allegedly misappropriated by Defendants, including "technologies" to display information in certain ways to the user.  (*See, e.g.*, Compl. ¶ 84 (defining the "trade secrets" to include, among other things, "the technology to visualize stories on a map" and "the technology to analyze social cues and display those cues as aggregated social patterns").)   But the Complaint does not define "technology."  And that's a problem in this context.  The term "technology" could mean a number of different things.  It could refer to the app's source code.  It could also refer generally to the app's algorithms, or its architecture or framework.  Or it could refer to the visual design or functional aspects of the app's user interface.  Any or all of those things might potentially be a trade secret if Plaintiff took steps to keep them secret.  The Complaint does not specify which it is, or if it is all of them, or if the alleged trade secrets are something else entirely.

12

That said, the Complaint's repeated references to the visual aspects of the YouMap app, along with its use of screenshots to illustrate the similarities between the Snap Map and YouMap user interfaces, gives the reader the strong impression that the alleged trade secrets are aspects of YouMap's visual design.[5]  However, Moving Defendants' motion to dismiss pointed out that screenshots and videos of YouMap's visual design had already been disclosed to the public in Rally's social media posts *before* any trade secrets are alleged to have been appropriated by Defendants.  When confronted with that, Plaintiff switched course about what it claimed were the trade secrets.  In contrast to the impression given by the Complaint, Plaintiff's Answering Brief appears to suggest that the claimed trade secrets are instead some underlying aspect of the software:

> [T]he Zenly employees unlawfully exploited YouMap's *underlying* technologies from the Beta Testing.  Previously disclosed screenshots only provide a surface-level glimpse of the user interface; it is the building blocks of such user interface—hidden beneath the surface and not publicly available—that Defendants stole in Beta Testing.  Those building blocks are YouMap's adaptive visualization and density aggregation technologies.

(D.I. 16 at 13 (emphasis in original).)

There are at least two problems with Plaintiff's current position.  The first is that Plaintiff must adequately identify the trade secrets in the *Complaint*.  If the claimed trade secrets are source code or software algorithms (or something else entirely), Plaintiff needs to specify that in the Complaint.

---

[5] The Complaint repeatedly uses screen captures of the YouMap app to illustrate its proprietary technology.  *See, e.g.*, Compl. ¶ 55 ("Figure 7, below, identifies the technology misappropriated by the Defendants and then incorporated into SNAPCHAT."); *id.* ¶ 92 ("SNAPCHAT looks and acts like YOUMAP after the Zenly/Snap Deal, as depicted in Figure 12, below, confirming that Defendants had misappropriated the Trade Secrets.").

The second problem is that Plaintiff's failure to adequately identify the trade secrets renders the Court unable to determine if the Complaint plausibly alleges that Defendants misappropriated them. By "building blocks," is Plaintiff referring to source code? Software algorithms? Of course, both could be trade secrets, and they could be misappropriated. But the Complaint does not allege facts suggesting that Defendants gained access to any source code or algorithm, much less how they did it. For example, does Plaintiff contend that Zenly employees somehow hacked the beta version of YouMap? There are no facts alleged to support that contention.

The Complaint alleges that some Zenly employees obtained unauthorized access to the beta version of YouMap before it was released to the public. Those facts are consistent with and might support a plausible claim that Zenly employees misappropriated certain aspects of the visual design of YouMap's user interface, as suggested by the Complaint. Plaintiff has now changed course and does not argue that the trade secrets are visual design aspects. Plaintiff now contends that the stolen trade secrets are, instead, "building blocks . . . hidden beneath the surface" of the YouMap app. (D.I. 16 at 13.) But the Complaint lacks factual allegations supporting the contention that Zenly employees had access to "hidden" source code or algorithms underlying the YouMap app that were "not publicly available." (*Id.*) And if the trade secrets are not source code or software algorithms, what are they and how did Defendants gain access to them? Alternatively, what facts make it plausible that Defendants did gain access to them? Only when Plaintiff sufficiently identifies (in the Complaint) what the trade secrets are will the Court be able to assess whether Plaintiff has plausibly alleged that Defendants took them.[6]

---

[6] Plaintiff's Answering Brief does not even attempt to defend the Complaint's allegations that the stolen trade secrets included "[g]eomarketing and promotion methodologies" and "[b]usiness and strategic plans, marketing channels and customer segments." (Compl. ¶ 84.) Nor does the Complaint explain how Defendants could have gained access to any of those things by downloading the beta version of YouMap.

Plaintiff argues that it should "not have to disclose its trade secrets in a publicly-filed Complaint." (D.I. 16 at 10-11.) I agree that the law does not require Plaintiff to set forth source code or algorithms in the Complaint. But Plaintiff is required to state what the trade secrets are— *e.g.*, source code, algorithms, visual design aspects, or something else—in sufficient detail to put Defendants on notice of what they are accused of misappropriating and for this Court to determine whether any misappropriation occurred.

Under the circumstances, I agree with Moving Defendants that the Complaint fails to adequately identify the claimed trade secrets. Accordingly, I recommend that the Court dismiss the Defend Trade Secrets Act claim against Moving Defendants.

### D.   Common Law Misappropriation of Trade Secrets Claim (Count II)

Moving Defendants argue that Plaintiff's claim for "common law misappropriation of trade secrets" (Count II) should be dismissed because it is preempted by the Delaware Uniform Trade Secrets Act (DUTSA). Plaintiff responds that "[i]f the misappropriated information does not qualify as a 'trade secret' under DUTSA, plaintiff may still proceed on its alternative claim for common law misappropriation." (D.I. 16 at 15.)

Plaintiff is wrong. Plaintiff does not take issue with Moving Defendants' implicit assumption that Delaware law applies to the common law trade secrets claim. And, under Delaware law, DUTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a). To determine whether a tort claim is preempted by DUTSA, courts consider whether the claim is "grounded in the same facts" as a misappropriation of trade secrets claim. *Ethypharm S.A. Fr. v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (quoting *Savor, Inc. v. FMR Corp.*, No. 00C-10-249-JRS, 2001 WL 541484, at *4 (Del. Super. Ct. Apr. 24, 2001), *aff'd*, 812 A.2d 894 (Del. 2002)). Moreover, DUTSA preempts "all claims stemming from the same acts as the alleged

15

misappropriation . . . even if the information at issue is not a trade secret."  *Id.*; *Alarm.com Holdings, Inc. v. ABS Capital Partners Inc.*, C.A. No. 2017-0583-JTL, 2018 WL 3006118, at *9-11 (Del. Ch. June 15, 2018), *aff'd*, 204 A.3d 113 (Del. 2019).

Here, Moving Defendants point out—and Plaintiff does not dispute—that the common law trade secrets claim is based on Plaintiff's contention that Defendants improperly accessed and misappropriated Plaintiff's secret "technologies."  Without question, Plaintiff's "common law" misappropriation of trade secrets claim is grounded in the same facts as a DUTSA misappropriation of trade secrets claim.  It is thus preempted regardless of whether the Plaintiff's "technologies" qualify as trade secrets.  Accordingly, I recommend that the Court dismiss the common law misappropriation of trade secrets claim.

### E.    Unfair Competition Claim (Count III) and Tortious Interference with Business Relationships and Prospects Claim (Count VIII)

Moving Defendants argue that the unfair competition claim (Count III) and tortious interference with business relationships and prospects claim (Count VIII) should be dismissed because they are (1) preempted by DUTSA and/or (2) inadequately pled.

I agree that the Complaint fails to state non-preempted claims of unfair competition and tortious interference.  Here, again, Plaintiff does not take issue with Defendants' implicit assumption that Delaware law applies to those claims.  The elements of an unfair competition claim under Delaware law are (1) that the plaintiff has a reasonable expectancy of entering a valid business relationship, (2) with which the defendant wrongfully interferes, (3) thereby defeating the plaintiff's legitimate expectancy and (4) causing him harm.  *Ethypharm S.A. Fr. v. Abbott Labs.*, 598 F. Supp. 2d 611, 618 (D. Del. 2009).  The elements of a tortious interference with business relations claim are similar: (1) a reasonable probability of a business relationship, (2) intentional

interference by defendant with that opportunity, (3) proximate causation, and (4) damages.[7]
*Mondero v. Lewes Surgical & Med. Assocs., P.A.*, Civil Action No. 14-00588-RGA, 2018 WL
1532429, at *4 (D. Del. Mar. 29, 2018).  Both claims require a wrongful interference with the
plaintiff's expectancy in a business relationship that had a reasonable probability of being
consummated.

To plead a reasonable probability of a business relationship, the plaintiff must "'identif[y]
a specific party who was prepared to enter into a business relationship but was dissuaded from
doing so by the defendant' and cannot rely on generalized allegations of harm." *Agilent Techs.,
Inc. v. Kirkland*, C.A. No. 3512-VCS, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009).  The
plaintiff need not name specific parties, but it must plead facts to allow the court to "reasonably
infer that specific parties were involved." *Id.*

Here, neither Plaintiff's Complaint nor its briefing explains how Defendants are alleged to
have wrongfully interfered with anything.  If the alleged wrongful interference is Defendants'
misappropriation of Plaintiff's secret "technologies," the claims are preempted by DUTSA.  If the
alleged interference is something else, the Complaint does not say what it is.

Nor does the Complaint plead facts suggesting the existence of a specific party who was
prepared to enter into a business relationship with Plaintiff but was dissuaded from doing so as the
result of Defendants' wrongful interference (whatever it is).  Accordingly, the unfair competition
claim and the tortious interference with business relations claim should be dismissed.

---

[7] The Delaware Court of Chancery recently stated that "[t]o the extent that unfair
competition exists as an independent common-law tort, it is essentially the same tort [as] tortious
interference with prospective business relations." *Preston Hollow Capital LLC v. Nuveen LLC*,
C.A. No. 2019-0169-SG, 2019 WL 3801471, at *9 n.96 (Del. Ch. Aug. 13, 2019).

### F.      Unjust Enrichment Claim (Count V)

Moving Defendants argue that Plaintiff's unjust enrichment claim (Count V) is preempted by DUTSA.  Plaintiff responds that "Defendants were unjustly enriched and it was YouMap's technology that made them profitable." (D.I. 16 at 16.)

I agree with Moving Defendants that the Complaint fails to state a non-preempted unjust enrichment claim against them.  To the extent I can understand it, Plaintiff's unjust enrichment theory is grounded in the same facts as its trade secrets misappropriation theory: Plaintiff contends that Defendants misappropriated Plaintiff's secret "technologies" and caused it to suffer damages.  Such a claim is preempted by DUTSA.  Accordingly, I recommend that the Court dismiss the unjust enrichment claim.

### G.      Violation of California Business & Professions Code § 17200 (Count VI)

Moving Defendants argue that Plaintiff fails to state a non-preempted claim under California Business & Professions Code § 17200 (Count VI).  I agree.

Section 17200 prohibits three varieties of "unfair competition": it proscribes acts and business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  To state a claim under § 17200, "a plaintiff must plead the specific rubric under which the proscribed conduct falls."  *Alta Bates Summit Med. Ctr. v. United of Omaha Life Ins. Co.*, No. 07-04224 JSW, 2009 WL 57108, at *3 (N.D. Cal. Jan. 8, 2009).  Here, the Complaint does not specify which variety of unfair competition Defendants are alleged to have engaged in.  The claim could be dismissed for that reason alone.

Plaintiff argues that the Complaint states a claim under § 17200 because a "find[ing] that Defendants misappropriated the plaintiff's trade secrets . . . could support 'unlawful' business practices liability under California's Unfair Competition Law."  (D.I. 16 at 16 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1138-39 (E.D.

18

Cal. 2008).)  I disagree.  Even if the Complaint did plausibly allege trade secret misappropriation and did specify that the business practice was "unlawful" (it does neither), the claim would still be subject to dismissal.  Similar to DUTSA, the California Uniform Trade Secrets Act preempts claims that are based on the same facts as a misappropriation of trade secrets claim.  *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114-15 (N.D. Cal. 2012).  Accordingly, § 17200 claims are preempted if they rely on the same allegations that form the basis of a trade secrets claim.  *Id.* at 1116; *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 840 (N.D. Cal. 2014) (holding that CUTSA preempted § 17200 unfair competition claim because plaintiff had "not alleged any [actions by defendants] with respect to [the unfair competition claims] other than theft of secret information.").

In this case, the sole asserted basis for the § 17200 claim is Plaintiff's contention that Defendants acted "unlawful[ly]" by misappropriating Plaintiff's trade secrets.  The § 17200 claim is thus preempted by CUTSA, and I recommend that the Court dismiss it.

## H.    Breach of Contract Claim (Count IV)

Moving Defendants argue that the Complaint fails to plausibly allege a breach of contract claim against them.  I agree.

It is a fundamental principle of Delaware contract law that only the parties to a contract are bound by the contract.  *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).  It's possible that the Complaint plausibly alleges a contract between Plaintiff and each of the individuals who agreed to the terms and conditions of Plaintiff's beta test. As to Moving Defendants, however, the Complaint lacks facts suggesting that they were parties to any contract.

Plaintiff argues that Moving Defendants "bec[a]me parties" by "implicitly adopting" the beta testing agreement.  (D.I. 16 at 19.)  If Plaintiff is referring to the legal doctrine known as

19

ratification, the Complaint lacks facts to plausibly support its application here. To ratify an act, a person must "manifest[] assent that the act shall affect the person's legal relations" or engage in "conduct that justifies a reasonable assumption that the person so consents." *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 802 (Del. Ch. 2014) (quoting Restatement (Third) of Agency § 4.01). Here, the Complaint fails to allege facts suggesting that Moving Defendants were aware of any beta testing contract, much less that they manifested assent to be bound by it or engaged in conduct that indicated their consent.[8]

I recommend that the Court dismiss the breach of contract claim as to Moving Defendants.

## I. Violation of Lanham Act (Count IX)

Next, Moving Defendants argue that the Complaint fails to state a Lanham Act claim against them. I agree.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits certain unfair trade practices. It states, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[8] The *American Legacy Foundation v. Lorillard Tobacco Co.* case cited by Plaintiff did not relax the legal requirements for ratification. 831 A.2d 335, 349-50 (Del. Ch. 2003) (holding that a corporation that was created and funded via an agreement "adopted" the agreement by accepting the funds and was therefore bound by certain limitations about what it could do with the funds; *see also id.* at 348 n.50 (citing Restatement (Second) of Agency sections that discuss ratification). In that case, there was no question that the corporation alleged to be bound had knowledge of the agreement's existence.

20

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  To state a claim of false advertising under the Lanham Act, "the complaint must include sufficiently detailed allegations regarding the nature of the alleged falsehood to allow defendant to make a proper defense."  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009) (citation and internal marks omitted).

Plaintiff's theory of Lanham Act liability is not apparent from the Complaint.  It alleges that "Defendants' unauthorized use of the Trade Secrets and their statements about their respective mobile applications, including their development and source, were false or misleading to consumers and likely to deceive consumers . . . into believing the Defendants' respective mobile applications were developed by the respective Defendants."  (Compl. ¶¶ 148-49.)   What "statements" is the Complaint referring to?  None are alleged.  The claim should be dismissed for that reason alone.

The Complaint is also deficient because, at best, it suggests a theory of "false attribution of the authorship of an invention or innovation," which is not actionable under § 43(a) of the Lanham Act.  *Robert Bosch LLC*, 632 F. Supp. 2d at 366 (internal quotation marks omitted); *see also Dastar Corp.*, 539 U.S. at 37.  There is no plausible allegation that Moving Defendants took the YouMap app itself (as opposed to the idea behind it) and told consumers that it was the Zenly app or the Snap Map upgrade.  Nor is there an allegation that Moving Defendants distributed the

21

Zenly app or Snap Map and misrepresented to consumers that it was the YouMap app.  Instead, the Complaint suggests that there is some "technology" that underlies the YouMap app that Defendants falsely claimed to have invented.  That is not a misrepresentation of "origin" within the meaning of the Lanham Act.

Plaintiff's Answering Brief contends that the "Complaint sufficiently alleges a Lanham Act claim by pleading that Defendants 'mispresent[] the nature, characteristics [or] qualities' of their mobile applications and that they engaged in unfair treatment of the Plaintiff on the sole or primary basis of an anti-competitive motive to interfere with YouMap's rights, or to use or exploit same."  (D.I. 16 at 18.)  I am not sure what Plaintiff is getting at.  What misrepresentation?  To state a claim under § 43(a) of the Lanham Act, the Complaint must identify a false or misleading representation.  It does not do that.

To the extent I can understand Plaintiff's theory, it is that Defendants' distribution of the Zenly app and Snap Map implied to the public that Defendants developed all of the technology underlying the apps and, by implication, Plaintiff did not.  Even if Plaintiff had identified a misrepresentation, that argument fails.  Misattribution of authorship or status as an inventor of a product does not relate to the product's "nature, characteristics, [or] qualities."  *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) ("[A]uthorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act.").

The Complaint does not state a plausible claim under § 43(a) of the Lanham Act, and I recommend that the Court dismiss it.

### J.        Violation of Delaware Uniform Deceptive Trade Practices Act (Count VII)

Finally, Moving Defendants argue that the Complaint fails to state a claim under the

Delaware Uniform Deceptive Trade Practices Act (DUDTPA), 6 Del. C. § 2531, e*t seq.* (Count

VII).  I agree.

Section 2532(a) of Title 6 of the Delaware Code sets forth twelve categories of conduct

that amount to "deceptive trade practice[s]."[9]  The Complaint contains a conclusory allegation that

---

[9] The statute provides:
> (a) A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:
> > (1) Passes off goods or services as those of another;
> > (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> > (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
> > (4) Uses deceptive representations or designations of geographic origin in connection with goods or services;
> > (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
> > (6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
> > (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
> > (8) Disparages the goods, services, or business of another by false or misleading representation of fact;
> > (9) Advertises goods or services with intent not to sell them as advertised;
> > (10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;
> > (11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions; or

"Defendants willfully engaged in deceptive trade practices, including under 6 Del. C. § 2531 *et seq.*, in the course of their respective businesses, vocations and occupations," and it goes on to recite nearly verbatim ten of the twelve categories in the statute—including some that clearly do not apply to the facts alleged.  (Compl. ¶ 140 (referring to § 2532(a)(6) ("Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand.")).)

The Complaint does not allege any facts specific to Plaintiff's DUDTPA claim.  Nor is it evident to the undersigned how the other facts set forth in the Complaint amount to any of the statutorily-defined "deceptive trade practices."  Plaintiff's DUDTPA claim could, and should, be dismissed for that reason alone.  *See Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (internal marks omitted)).

Plaintiff argues (in its Answering Brief) that the Complaint sufficiently alleges "passing off."  Plaintiff does not specify which section of the statute it is referring to, but I presume it is § 2532(a)(1), which proscribes "[p]ass[ing] off goods or services as those of another."  6 Del. C. § 2532(a)(1).  Plaintiff is wrong.  The statute, by its terms, refers to misrepresenting that one's own "goods" or "services" are someone else's.  *See Dionisi v. DeCampli*, No. 9425, 1995 WL 398536, at *14 (Del. Ch. June 28, 1995) ("Section 2532(a)(1) of the [DU]DTPA is shorthand for an individual attempting to sell his goods as those of another.  Courts have extended that section to include a seller's substitution of a brand of good for the brand originally purchased by the

---

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 Del. C. § 2532(a).

buyer." (internal citation and marks omitted)), *amended on other grounds*, 1996 WL 39680 (Del.

Ch. Jan. 23, 1996).  There is no allegation that Defendants "passed off" the Zenly app, Snapchat,

or any other of Defendants' goods or services as the YouMap app.[10]

I recommend that the Court dismiss the DUDTPA claim.[11]

---

[10] To the extent Plaintiff argues that it sufficiently alleged a so-called "reverse passing off" claim—an argument not explicit in Plaintiff's briefing—Plaintiff is again mistaken.  Reverse passing off is where the defendant misrepresents someone else's goods or services as his own.  *Cf. Dastar Corp.*, 539 U.S. at 27 n.1 (discussing reverse passing off under the Lanham Act).  Plaintiff has not cited any authority for the proposition that 6 Del. C. § 2532(a)(1) prohibits reverse passing off.  Assuming for the sake of argument that such conduct is proscribed by the statute, Plaintiff fails to plausibly allege it.  There is no allegation that Defendants took the YouMap app produced by Plaintiff and passed it off to consumers as Defendants' own apps.

[11] Because I recommend that the Court dismiss all of the claims against Moving Defendants, I do not reach Zenly Inc.'s and Snap Inc.'s argument that the Complaint fails to satisfy the notice pleading standard because it lumps multiple defendants together without specifying which did what.  The Court will be better able to assess whether the notice pleading standard is met as to each named defendant if Plaintiff manages to amend its Complaint to clarify its theories and state a plausible claim of wrongdoing.

That said, I agree with Spiegel that the Complaint fails to state an individual claim against him.  Acts taken by a corporation are not automatically imputed to its agents.  *See Gassis v. Corkery*, C.A. No. 8868-VCG, 2014 WL 3565418, at *5 (Del. Ch. July 21, 2014), *aff'd*, 113 A.3d 1080 (Del. 2015).  While a corporate officer might be liable for torts that he personally participates in, the Complaint does not plausibly allege Spiegel's participation in any wrongdoing.  Aside from a statement of Spiegel's residency (Compl. ¶ 29), the Complaint contains exactly one factual allegation about Spiegel: "Snap Map had not been developed to Mr. Spiegel's satisfaction, so he directed Snap to investigate the market to purchase the technology its own developers were unable to perfect." (*Id.* ¶ 6.)  That factual allegation does not plausibly demonstrate Spiegel's participation in a tort or that he breached a contract.

Plaintiff's Answering Brief contends that Spiegel was "the mastermind and co-executioner of [a] wrongful scheme."  (D.I. 16 at 8.)  Not only is that conclusory allegation not in the Complaint, there are no facts in the Complaint to plausibly support it if it were.

## IV.    CONCLUSION

For the reasons set forth above, I recommend the following:

1.    Moving Defendants' Motion to Dismiss for failure to state a claim and for lack of personal jurisdiction over Evan Spiegel (D.I. 12) should be GRANTED.  As explained above, the Court lacks personal jurisdiction over Defendant Spiegel.  As to Defendants Snap Inc. and Zenly Inc., I recommend that Plaintiff be granted leave to amend the Complaint to address the identified deficiencies within 21 days.[12]

2.    Moving Defendants' Request for Judicial Notice (D.I. 14) should be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages.  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: January 12, 2021

The Honorable Jennifer L. Hall
United States Magistrate Judge

---

[12] Moving Defendants request dismissal "with prejudice."  (*See* D.I. 12-1 (Proposed Order).)  However, it is not clear on this limited record that amendment would necessarily be futile. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004) (holding that leave to amend should be granted "unless a curative amendment would be inequitable, futile, or untimely").