**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| YOU MAP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 20-162-CFC |
| | ) |
| SNAP INC., ZENLY S.A.S., ZENLY INC., | ) |
| EVAN SPIEGEL, ANTOINE MARTIN, | ) |
| ALEXIS BONILLO, ALEXANDRE | ) |
| BERNARD, NICOLAS DANCIE, NOE | ) |
| LOTERMAN, NICOLAS FALLOURD, | ) |
| JONATHAN ETAIX, CHRISTOPHE | ) |
| KEREBEL and ROY MARMLESTEIN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

Plaintiff You Map, Inc. ("Plaintiff" or "You Map") filed this suit against three corporate entities and ten individuals, alleging trade secret misappropriation, breach of contract, and other claims.

Plaintiff developed a mobile application called YouMap that uses a novel visualization to display a map of what is happening in a particular area. In late 2016 and early 2017, some of the individual defendants signed up to be beta testers of YouMap. Unbeknownst to Plaintiff, those individuals were employed by either Defendant Zenly S.A.S. or its subsidiary, Defendant Zenly Inc. (though the pleadings don't specify which). According to Plaintiff, the individuals used their status as beta testers to access You Map's trade secret software algorithms and other trade secrets, which they then incorporated into Zenly's mobile app. Zenly S.A.S. was subsequently acquired by Defendant Snap Inc. ("Snap"), and Snap also allegedly incorporated the stolen trade secrets into its Snapchat mobile app.

The Court dismissed the original Complaint without prejudice on February 1, 2021. (D.I. 29; D.I. 32.) 2021 WL 327388 (D. Del. Feb. 1, 2021) (adopting Report and Recommendation, 2021 WL 106498 (D. Del. Jan. 12, 2021)). On February 9, 2021, Plaintiff filed a First Amended Complaint ("FAC"). (D.I. 33.) Pending before the Court is Defendants' Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. (D.I. 37.) The motion is fully briefed. (D.I. 38; D.I. 40; D.I. 42.) For the reasons discussed below, I recommend that the motion be GRANTED-IN-PART and DENIED-IN-PART.

## I.      BACKGROUND

My previous Report and Recommendation summarized the factual allegations in the original Complaint. 2021 WL 106498, *1-3. The FAC retains most of those allegations and adds some new allegations. This Report and Recommendation assumes familiarity with my prior report, and I set forth below only the new allegations and other information necessary to resolve the pending motion.[1]

Plaintiff created a mobile application ("app") called YouMap, which allows users to share and view information about geographical locations on an interactive map. (D.I. 33 ("FAC") ¶¶ 1, 46-48.) In the summer of 2016, Plaintiff offered YouMap for beta testing by users who accepted Plaintiff's terms and conditions, which included confidentiality, non-use, and nondisclosure obligations.[2] (*Id.* ¶¶ 22-23, 75.) The beta testing was "by invitation only," meaning that users

---

[1] I assume the facts alleged in the FAC to be true for purposes of resolving the motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The beta testers also "agreed to not: '(a) modify, reverse engineer, decompile, or disassemble [YouMap]; (b) rent, lease, loan, sell, sublicense, distribute, transmit, or otherwise transfer [YouMap]; (c) make any copy of or otherwise reproduce [YouMap]; or (d) display [YouMap] to unauthorized third parties without [You Map's] authorization.'" (*Id.* ¶ 78.)

2

could only gain access if they were invited or if they submitted a request to participate that was accepted by Plaintiff's service provider.  (*Id.* ¶ 81.)   Plaintiff directed its service provider not to accept any of Plaintiff's competitors in the testing.  (*Id.* ¶ 21.)

Defendant Zenly Inc. was a Delaware corporation and a subsidiary of Defendant Zenly S.A.S., a French limited liability company. (*Id.* ¶¶ 37-38; D.I. 18.)  "Zenly"[3]  developed a mobile mapping application called Zenly ("Zenly app").  (*Id.* ¶¶ 2, 4-6.)  The Zenly app allows users to locate other users on a map.  (*Id.*)

On November 16, 2016, Defendant Antoine Martin, a co-founder and the President of Zenly, sent an e-mail to Plaintiff and asked if Zenly employees could participate in the beta test of YouMap.  (*Id.* ¶¶ 17-19.)  Plaintiff did not respond.

Subsequently, between November 29, 2016 and February 1, 2017, six Zenly employees— Defendants Nicolas Dancie, Noe Loterman, Nicolas Fallourd, Jonathan Etaix, Christophe Kerebel, and Roy Marmlestein (collectively, the "Individual Defendants")[4]—signed up and were accepted as beta testers of YouMap.  (*Id.* ¶¶ 21, 24, 84-89.)  Defendants Loterman and Kerebel registered with false names and private (*i.e.*, non-Zenly) e-mail addresses.  (*Id.* ¶¶ 84, 87.)  Defendant Fallourd, who at the time was Zenly's Senior Product Designer and Product Manager, supplied a non-Zenly e-mail address during registration.  (*Id.* ¶¶ 41, 85.)  Defendants Etaix and Marmlestein

---

[3] Zenly Inc. was dissolved in May 2017 when Zenly S.A.S. was acquired by Defendant Snap Inc. ("Snap").  (FAC ¶¶ 29, 110; D.I. 18; D.I. 26.)  Like the original Complaint, the FAC collectively defines Zenly Inc. and Zenly S.A.S. as "Zenly."  Where I am able to discern from the FAC which defendant is alleged to do what, I will refer to the appropriate entity.  If I cannot tell, I will use the term "Zenly."  To avoid additional confusion, I will refer to the Zenly mobile application as the "Zenly app."

[4] The record does not reflect service of either the Complaint or the FAC on Defendants Etaix, Kerebel, or Marmlestein.  (*See* D.I. 38 at 2 n.1.)  Four other individuals are listed as Defendants in the caption of the FAC (Evan Spiegel, Antoine Martin, Alexis Bonillo, and Alexandre Bernard), but the FAC doesn't allege any claims against them.

likewise supplied non-Zenly e-mail addresses.  According to the FAC, Defendant Etaix "installed version 0.5 of the YOUMAP® mobile software application, including its underlying source-code metadata and object code, library files, machine code and software algorithm systems, on February 1, 2017, from an IP address in New York and engaged in four (4) sessions during the Beta Testing." (*Id.* ¶ 86.)

Plaintiff alleges that, prior to Individual Defendants' participation in the beta testing of YouMap, the Zenly app was not capable of geographically mapping semantic information for its users and did not use any of Plaintiff's trade secret technology.  (*Id.* ¶¶ 6, 100, 102.)  On February 3, 2017, two days after Etaix gained access to the beta version of YouMap, "Zenly released an update to its ZENLY mobile software application that contained YouMap's Trade Secret Technology, along with similar updates on March 15 and 20, 2017."  (*Id.* ¶¶ 25, 80, 86, 101.)

Defendant Snap acquired Zenly in May 2017, after months of discussions.  (*Id.* ¶¶ 14, 20, 27, 85.)  Prior to the acquisition, Snap's Snapchat social media app lacked the functionality to display semantic information on a map.  (*Id.* ¶¶ 2, 55, 103.)  Plaintiff alleges that, after Snap's acquisition of Zenly, Plaintiff's trade secret technology was incorporated into the Snapchat app as part of a new mapping feature called Snap Map, which Snap released in June 2017.  (*Id.* ¶¶ 28-29, 80, 82, 94-95, 103, 105-09.)

My prior Report and Recommendation concluded that the original Complaint failed to plausibly allege a trade secret.  In particular, I concluded that Plaintiff's assertion that Defendants misappropriated Plaintiff's trade secret "technologies" failed to provide Defendants with adequate notice of what about those "technologies" was alleged to be a trade secret. 2021 WL 106498, at *6.  While the Report and Recommendation noted that certain aspects of software applications could incorporate trade secrets—for example source code, algorithms, architecture or framework,

4

or visual design or functional aspects of the user interface—the original Complaint did not specify "which it is, or if it is all of them, or if the alleged trade secrets are something else entirely."  *Id.*

The FAC attempts to fix those deficiencies.   It now describes the trade secrets as including YouMap's (1) "adaptive visualization system/method/process and software algorithms"; (2) "ranking and relevancy system/method/process and software algorithms"; and (3) "interactive user interface system/method/process and software algorithms."[5]  (FAC ¶ 93.)  Each of those three categories is alleged to include:

---

[5] Regarding "adaptive visualization," the FAC alleges the following: "The Adaptive Visualization System/Method/Process, and its implementing software algorithms, create and generate the unique visualization functionality displayed on a user's device, such as a cell phone, that provides the user with an interactive function that allows for the display of relevant, semantic information at various levels – from a close-up, zoomed-in view to a wider, zoomed-out view, all the while providing the user with variable semantic information that would allow the user to decide whether to view more or less closely. The Adaptive Visualization System/Method/Process, and its implementing software algorithms, allows YOUMAP® to display a vast amount of visual content on a mobile phone screen, all the while maintaining legible and relevant, semantical information at all possible zoom levels on a map. . . . The Adaptive Visualization System/Method/Process, and its implementing software algorithms, prevents content and information from becoming too busy and overlapping on a mobile phone screen, all the while delivering content and information in legible format, maintain semantic cues at high-zoom levels where mobile-phone screen space becomes less available, and prioritizing information-order in terms of unique user relevance. . . . The Adaptive Visualization System/Method/Process, and its implementing software algorithms, further features the novel, operative, interactive visual functionality of ephemeral 'post bubbles' – a form of biomimicry of the natural physics of bubbles in nature – and further comprises the Trade Secrets. YOUMAP®'s functional 'post bubbles' pop in and out *adaptively* as a user zooms and pans in order to preview posted, relevant content and a user's device will, based on YOUMAP®'s proprietary systems and methods, only display enough bubbles as can be comprehended intelligently on a user's screen at any given time. A further critical interactive, functional feature of the Adaptive Visualization System/Method/Process, as implemented by its software algorithms, is that the post bubbles do not overlap, a feature that did not exist on map-based social media apps, including ZENLY and Snap Map, until YOUMAP®. A critical functional feature of the Adaptive Visualization System/Method/Process, and its implementing software algorithms, is its ability to detect the available screen space and then display only content previews that the screen can accommodate at a given screen axis. Furthermore, the bubbles themselves can move, so if the map is panned left, the bubble(s) may move slightly to the left beforehand. . . .   The Adaptive Visualization System/Method/Process, and its implementing software algorithms, further generates the novel, operative, interactive visual functionality feature of incorporating YOUMAP®'s density aggregation software technology in a 'heat map' form of display, thereby

providing an operative, interactive visual 'density visualization' feature to inform a user where more content may be visually displayed. The combination of post bubbles *and* heat maps is a further visual, interactive functional feature of the Adaptive Visualization System/Method/ Process, and is expressed and implemented by its software algorithms, thereby resulting in a synergistic, unprecedented power and functionality and exceptional user experience that did not exist before YOUMAP®. The combination of YOUMAP®'s density aggregation software technology, which may be in the form of YOUMAP®'s adaptive 'post bubbles' or visually expressed in any other format providing the same functionality, with heat maps provides a user with an interactive, operative functional 'guide' to browse content and an intelligent means of displaying that content so the user would not have to click again to understand whether the content is relevant." (*Id.* ¶ 93(a)(ii)-(v).)

Regarding "ranking and relevancy," the FAC alleges the following: "YOUMAP®'s Ranking and Relevancy System/Method/Process [ ], and its implementing software algorithms, provides for the functional display of relevant content in a more digestible fashion on the limited display space of a mobile phone screen. . . . The Ranking and Relevancy System/Method/Process [ ], and its implementing software algorithms, provides for the functional display of relevant content or content that may otherwise have a higher value than other posts depending on the user's zooming or panning activity. As a result of this functionality, YOUMAP® intelligently displays content having higher micro-relevance than lower macro-relevance as the user zooms or pans into geospatial regions on the map. Further, in its operative, functional state, the Ranking and Relevancy [ ] System/Method/Process [ ], and its implementing software algorithms, provides for and attaches the zoom level at which 'post bubbles' appear through a passive retrieval method dependent on both macro- and micro-relevance analysis. The Ranking and Relevancy [ ] System/Method/Process [ ], and its implementing software algorithms, further provides for the generation of showing users what is happening – *in real time* – in a particular location." (*Id.* ¶ 93(b)(ii)-(iii).)

Regarding "interactive user interface system," the FAC alleges the following: "The Interactive User Interface System/Method/Process User Interface, and its implementing software algorithms, provides a user of YOUMAP® the functional ability to create sub-environment or sub-communities on the interface for display. The functional Interactive User Interface System/Method/Process provides users with the ability to create or generate real-time micro reviews or information about a particular experience at a certain geographic location. This capability and software technology did not exist before YOUMAP®. In addition, the real-time micro-review functionality of the Interactive User Interface System/Method/Process harnesses and facilitates user interaction on [a] daily basis. As a result, over time, as user engagement grows, the Interactive User Interface System/Method/Process provides the user a comprehensive source for real-time information on user-created environments and communities, along with more public environments and communities, such as political demonstrations and protests. . . . The Interactive User Interface System/Method/Process, and its implementing software algorithms, further provides the functional ability of allowing users to create environment and communities visually displayed on the User Interface using a plethora of unique emojis appropriately named "MapMojis" by YouMap. A MapMoji is an icon layer symbolizing an environment, community or mood on the User Interface that is user-operated through the functionality of the Interactive User Interface System/Method/Process User Interface that is further functionalized through a corresponding, user-operated text box allowing a user to describe the environment, community, or

> the . . . system/method/process, and all of its functional and visual features, variations, expressions and embodiments, and the various steps comprising its component methods and processes, including the mobile software application and its underlying source-code metadata and object code, library files, machine code and software algorithm systems, all as implemented and expressed by and through various software algorithms.

(*Id.* ¶ 93(a)(i), (b)(i), (c)(i).)   The FAC further alleges that each trade secret results in "specific operative, interactive functional elements and features" that "may be viewed, learned and sufficiently understood for purposes of misappropriation by downloading, installing, accessing, using, investigating, dissecting, manipulating, reverse engineering and disassembling [YouMap]." (*Id.* ¶ 93(a)(ii), (a)(iii), (a)(iv), (a)(v), (b)(iii), (c)(ii), (c)(iii), (c)(iv); *see also* ¶¶ 22 ("[C]ontrary to popular belief, mobile software applications . . . , including YOUMAP®, are able to be reverse engineered and analyzed. . . . Plus, insofar as any YOUMAP® mobile application software was encrypted during the Beta Testing, Defendants used software tools to decrypt such software."), 91.)

The FAC also alleges that the "system, methods and processes comprising the Trade Secret Technology" as well as the "underlying software algorithms"

> were in fact viewed, learned, and sufficiently understood by Defendants . . . by and through the Beta Testing, for purposes of misappropriating that Trade Secret Technology. Defendants . . . did in fact misappropriate the Trade Secrets through their downloading, installation, accessing, use, investigation, dissection, manipulation, reverse engineering, and disassembly of [YouMap] and its underlying source-code metadata and object code, library files, machine code and software algorithm systems, and then

_____

mood. . . . The Interactive User Interface System/Method/Process, and its implementing software algorithms, further provides the functional ability of a semantic posting system. The semantic posting system of the Interactive User Interface System/Method/Process provides a process for selecting a symbol to convey a current mood or feeling onto the map. This may be accomplished by a user selecting an associated emoji or symbol or by automatically updating on a variety of factors as determined by the software algorithm, including, for example, a user's location, time of day, weather patterns, whether the user is at a specific venue, etc."  (*Id.* ¶ 93(c)(ii)-(iv).)

7

> incorporated the stolen Trade Secret Technology into [the Zenly app] and [Snap Map].

(*Id.* ¶¶ 94-95.)

The FAC has five counts: violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count I), violation of the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, *et seq.* (Count II), breach of contract (Count III), tortious interference with contractual relationship (Count IV), and infringement of U.S. Patent No. 10, 616,727 ("'727 patent") (Count V).  (FAC ¶¶ 115-55.)

In the pending motion  (D.I. 37), Defendants Zenly S.A.S., Dancie, Loterman, and Fallourd contend that the claims against them should be dismissed for lack of personal jurisdiction and/or failure to state a claim.  Defendants Snap and Zenly Inc. contend that the claims against them should be dismissed for failure to state a claim.

## II.    LEGAL STANDARDS

### A.    Lack of Personal Jurisdiction under Rule 12(b)(2)

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Although Rule 8 does not require a plaintiff to set forth in the complaint "the grounds upon which the court has personal jurisdiction over the defendant," *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995), "once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper," *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  But if the district court does not hold an evidentiary hearing, the court should resolve any factual disputes in the plaintiff's favor and should deny the motion if the plaintiff's evidence establishes "a prima facie case of personal jurisdiction."  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

8

## B.     Failure to State a Claim under Rule 12(b)(6)

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A possibility of relief is not enough. *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

## III.     DISCUSSION

### A.     Personal Jurisdiction over Zenly S.A.S., Dancie, Loterman, and Fallourd

Defendant Zenly S.A.S. and Individual Defendants Dancie, Loterman, and Fallourd contend that the court lacks personal jurisdiction over them.  (*See* D.I. 38 at 8-10.)  I agree.

To exercise personal jurisdiction over a defendant, a court generally must answer two questions, one statutory and one constitutional. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); *Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*, 78 F. Supp. 3d 572, 580 (D. Del. 2015), *aff'd*, 817 F.3d 755 (Fed. Cir. 2016).  The statutory inquiry requires the court to

determine whether jurisdiction over the defendant is appropriate under the long-arm statute of the state in which the court is located. *IMO Indus.*, 155 F.3d at 259.

The constitutional inquiry asks whether exercising jurisdiction over the defendant comports with the Due Process Clause of the U.S. Constitution. *Id.* Due process is satisfied where the court finds the existence of "certain minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts" with the forum state can give rise to "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). A court has general jurisdiction over a corporate defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). If the court has general jurisdiction over a corporate defendant, it may hear any claim against it, even if the claim arose outside the state. *Goodyear*, 564 U.S. at 919; *Provident Nat. Bank*, 819 F.2d at 437. A court has specific jurisdiction over a defendant in a particular suit "when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum." *Goodyear*, 564 U.S. at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8, (1984)); *see also Remick*, 238 F.3d at 255.

10

1.      **The Court lacks personal jurisdiction over Zenly S.A.S.**

Plaintiff's argument for personal jurisdiction over Zenly S.A.S. consists of seven sentences, none of which mention the Delaware long-arm statute, 10 Del. C. § 3104(c).  Plaintiff contends that the Court may exercise personal jurisdiction over Zenly S.A.S. because (i) it incorporated Zenly Inc. in Delaware, (ii) it controls Zenly Inc., (iii) it "participated in an acquisition with Snap," which is a Delaware entity, (iv) it has an "agency relationship with Snap," and (v) it "intentionally established a distribution channel of the infringing product to Delaware."  (D.I. 40 at 18-19.)  Plaintiff attached no affidavits or other evidence supporting any of its contentions.

I agree with Zenly S.A.S. that Plaintiff has failed to meet its burden of proving by affidavits or other competent evidence that jurisdiction is proper.  Even if jurisdiction were appropriate under 10 Del. C. § 3104(c) (a dubious proposition[6]), Plaintiff has failed to demonstrate that due process

---

[6] First, it is well established that Zenly S.A.S.'s position as a parent company to Zenly, Inc., a Delaware corporation, is insufficient on its own to confer personal jurisdiction over Zenly S.A.S. under § 3104(c)(1).  *Eurofins Pharma*, 623 F.3d at 156 ("[B]eing the foreign parent of a Delaware subsidiary, without more, is insufficient to confer personal jurisdiction over a nonresident defendant under the Delaware long-arm statute."); *see also AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 439 (Del. 2005) (concluding that ownership of a Delaware corporation "does not, without more, amount to the transaction of business under [subsection (c)(1) of] Delaware's Long Arm Statute").

Second, "merely participating in the formation of a Delaware entity, without more, does not create a basis for jurisdiction in Delaware.  Instead, the formation must be an integral component of the total transaction to which plaintiff[']s cause of action relates." *Connecticut Gen. Life Ins. Co. v. Pinkas*, No. 5724-VCN, 2011 WL 5222796, at *2 (Del. Ch. Oct. 28, 2011) (internal quotations omitted).  There are no allegations or evidence of that here.

Third, entering into a contract with a Delaware entity does not amount to transacting business within the meaning of § 3104(c)(1).  *Abajian v. Kennedy*, No. 11-425, 1992 WL 8794, at *9-10 (Del. Ch. Jan. 17, 1992); *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, No. 2018-0783-PRW, 2020 WL 3564622, at *14 (Del. Ch. June 29, 2020).

As for Plaintiff's contention that the jurisdictional contacts of Snap should be attributed to Zenly S.A.S. under some kind of an agency theory, Plaintiff hasn't persuasively articulated its theory or provided any evidence to support it.  Under an agency theory of jurisdiction, courts will "consider the parent corporation responsible for the specific jurisdictional acts of the subsidiary." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991).  Here, however, Snap is the parent.

is satisfied.  The Court clearly does not have general jurisdiction over Zenly S.A.S.  As for specific jurisdiction, Plaintiff has failed to demonstrate that its claims against Zenly S.A.S. arise out of or relate to Zenly S.A.S.'s contacts with Delaware.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  There is no allegation, much less evidence, that Zenly S.A.S. did anything in or directed at Delaware that would subject it to specific jurisdiction here.

I also reject Plaintiff's apparent contention that the Court may exercise jurisdiction under a stream of commerce theory because Zenly S.A.S. "established a distribution channel of the infringing product to Delaware."  (D.I. 40 at 18-19.)  Even if a stream-of-commerce theory were viable under governing law, Plaintiff has neither alleged nor offered any evidence that Zenly S.A.S. distributed anything that ended up in Delaware.[7]

---

Plaintiff devotes a single sentence to its contention that the Court has jurisdiction over Zenly S.A.S. under a "conspiracy theory" (D.I. 40 at 20), but Plaintiff does not explain how that theory applies here, nor does Plaintiff provide any evidence.  The conspiracy theory of jurisdiction, in essence, says that the presence of personal jurisdiction over one conspirator—based on his acts in or on the injury he caused in Delaware—may result in the Court having jurisdiction over co-conspirators who would not otherwise be amenable to jurisdiction in Delaware.  It is not "an independent jurisdictional basis." *Dow Chem. Co. v. Organik Kimya Holding A.S.*, No. 12090-VCG, 2017 WL 4711931, at *11 (Del. Ch. Oct. 19, 2017) (quoting *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 976 (Del. Ch. 2000)).

[7] As noted above, the FAC collectively defines Zenly Inc. and Zenly S.A.S. as "Zenly," but whether this Court has personal jurisdiction over Zenly S.A.S depends on the specific actions it took during the alleged events.  It is impossible to tell from Plaintiff's group pleading whether Zenly S.A.S. is alleged to have distributed anything that ended up in Delaware and Plaintiff presents no evidence that it did.

Plaintiff also points to Federal Rule of Civil Procedure 4(k)(2) as a basis for personal jurisdiction over Zenly S.A.S.  Rule 4(k)(2), colloquially known as the federal long-arm statute, allows a court to exercise jurisdiction over a foreign defendant that is not subject to the jurisdiction of the courts of general jurisdiction of any state, but has sufficient aggregate contacts with the United States such that the exercise of jurisdiction would comport with due process. *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004).  Rule 4(k)(2) does not support jurisdiction at least for the reason that Plaintiff has failed to provide evidence that Zenly S.A.S. has sufficient contacts with the United States.  Plaintiff points out that "Zenly [S.A.S.] formed a Delaware entity and entered into an acquisition with a Delaware corporation to sell the infringing product" into the United States.  (D.I. 40 at 20.)  But merely owning a Delaware entity

12

###### 2.     The Court lacks personal jurisdiction over Dancie, Loterman, and Fallourd.

Individual Defendants Dancie, Loterman, and Fallourd contend that the claims against them should be dismissed for lack of personal jurisdiction.[8]  Plaintiff argues that those individuals are subject to this Court's personal jurisdiction because (i) "[t]he Beta Testing occurred in the U.S.," (ii) another Individual Defendant (Etaix) downloaded the beta version of YouMap from a New York IP address, (iii) Defendant Loterman resides in the United States, as do two other Individual Defendants (Kerebel and Marmlestein), and (iv) "it was 'foreseeable' that [Individual Defendants'] actions would have an 'effect' in the U.S." (D.I. 40 at 19.)  Plaintiff's brief refers in passing to 10 Del. C. § 3104(c), but Plaintiff does not explain which section of the Delaware long-arm statute is alleged to be satisfied or how it is satisfied by any of those allegations.

I agree with Dancie, Loterman, and Fallourd that Plaintiff has failed to meet its burden to establish that jurisdiction is proper in Delaware under § 3104(c).  None are Delaware residents. There is no evidence that any of them has ever been to Delaware, transacted business here, or caused any injury here, and Plaintiff doesn't contend otherwise.

Plaintiff also argues that the Court has jurisdiction over the individuals under a "conspiracy theory" (D.I. 40 at 20), but Plaintiff does not explain how that theory applies here, nor does Plaintiff provide any evidence.  Plaintiff's argument (to the extent I can understand it) appears to

---

that distributes product in the United States is insufficient to support jurisdiction over a nonresident defendant. *Cf. Univ. of Massachusetts Med. Sch. v. L'Oreal S.A.*, No. 17-868-CFC-SRF, 2018 WL 5919745, at *10-12 (D. Del. Nov. 13, 2018), *report and recommendation adopted,* No. 17-868-CFC, 2019 WL 2151701 (D. Del. May 17, 2019); *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 506 (D. Del. 2017).

[8] As noted above, Individual Defendants Etaix, Kerebel, or Marmlestein have not been served, and they have not joined the motion to dismiss.  (*See* n.4, *supra*.)

be that Dancie, Loterman, and Fallourd are subject to personal jurisdiction in *Delaware* because Loterman and others had contacts with the *United States*. That is not the law.

To the extent Plaintiff is arguing that the Court may exercise jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), I disagree. (*See* n.6, *supra*.) Defendant Loterman is alleged to be a resident of California, so Rule 4(k)(2) is inapplicable. As for Dancie and Fallourd, Rule 4(k)(2) does not support jurisdiction at least for the reason that Plaintiff has failed to provide evidence that they have sufficient contacts with the United States such that the exercise of jurisdiction would satisfy due process.

### 3.     Jurisdictional discovery is not warranted.

Plaintiff requests, in the alternative, that the Court grant leave to obtain jurisdictional discovery. (D.I. 40 at 21-22 n.7.) Although there is a presumption in favor of jurisdictional discovery, it should not be ordered as a matter of course. *See E.I. DuPont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773-SLR-CJB, 2012 WL 4511258, at *11 (D. Del. Sept. 28, 2012). Jurisdictional discovery is only appropriate when the plaintiff presents "factual allegations that suggest with reasonable particularity the possible existence" of facts supporting a finding of personal jurisdiction. *Eurofins Pharma*, 623 F.3d at 157 (internal marks omitted).

Plaintiff seeks discovery on two topics. (D.I. 21-22 n.7.) First, it requests jurisdictional discovery to "seek evidence about Zenly S.A.S.'s and/or Martin's decision to incorporate Zenly Inc. in Delaware." However, as explained above, merely participating in the formation of a Delaware entity, without more, does not create a basis for jurisdiction in Delaware. To support jurisdiction, the formation must be "an integral component of the total transaction to which plaintiff[']s cause of action relates." *Connecticut Gen. Life Ins.*, 2011 WL 5222796, at *2 (internal quotations omitted). Here, there are no factual allegations suggesting that the decision to

14

incorporate Zenly Inc. in Delaware was in any way related to the misappropriation of Plaintiff's trade secrets.

Second, Plaintiff contends that "Defendants admit that not all of Zenly S.A.S.'s relevant design work occurred in France." (D.I. 40 at 22 n.7.) But there are no allegations suggesting with reasonable particularity that any of the design work or misappropriation occurred in Delaware.

As there is no indication that discovery will uncover any basis for this Court to exercise jurisdiction, "[t]o grant plaintiff[']s request . . . would be to allow plaintiff to 'undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.'" *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 548 (D. Del. 2012) (quoting *Eurofins Pharma*, 623 F.3d at 157).

In sum, the claims against Zenly S.A.S., Dancie, Loterman, and Fallourd should be dismissed for lack of personal jurisdiction, and Plaintiff's request for jurisdictional discovery should be denied.

## B.      DTSA (Count I) and DUTSA (Count II)

Defendants argue that Plaintiff's trade secret claims fail because Plaintiff does not adequately identify its trade secrets or plausibly allege how Defendants misappropriated the trade secrets. (D.I. 38 at 16-17.) This time around, I think the FAC passes muster.

The Defend Trade Secrets Act of 2016 (DTSA) provides, in relevant part, that "[a]n owner of a trade secret that is misappropriated may bring a civil action" to obtain damages and injunctive relief. 18 U.S.C. § 1836(b)(1), (3). The DTSA defines "trade secret" broadly to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value" from not being generally known or readily ascertainable. 18 U.S.C. § 1839(3). To plead misappropriation of a trade secret under the DTSA,

15

"a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (citation omitted).

The Delaware Uniform Trade Secrets Act (DUTSA) likewise provides a cause of action for the misappropriation of trade secrets. 6 Del. C. § 2001 *et seq.* The parties do not point to any differences between the DTSA and the DUTSA that are material to the pending motion; accordingly, I will assess them together.

### 1.    The FAC adequately alleges trade secrets.

"[D]eciding 'whether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015)). Plaintiff's amended pleading now identifies its trade secrets with enough particularity to provide notice to Defendants about what they are accused of misappropriating. The FAC alleges that the trade secrets are three particular functionalities of YouMap—its "adaptive visualization" functionality, its "ranking and relevancy" functionality, and its "interactive user interface" functionality—as well as the underlying code, algorithms, and other software that make those functionalities work. The FAC also sets forth certain details about each of those functionalities. For example, it explains that the "adaptive visualization" functionality includes "ephemeral 'post bubbles'" that "pop in and out *adaptively* as a user zooms and pans in order to preview posted, relevant content and a user's device will, based on YOUMAP®'s proprietary systems and methods, only display enough bubbles as can be comprehended intelligently on a user's screen at any given time." (FAC ¶ 93(a)(iv).) It describes other functionalities in similar detail. (*Id.* ¶ 93;

16

*see* n.5, *supra*.)  Those allegations are plausible and sufficient to put Defendants on notice of what is alleged to be a trade secret.[9]

Defendants contend that the visual aspects of YouMap cannot be trade secrets because they were publicly disclosed prior to the alleged misappropriation.  However, I cannot conclude on the current record before the Court that all aspects of the alleged trade secrets were publicly available. Moreover, even if visual aspects of the YouMap user interface had been disclosed to the public, the record before the Court does not demonstrate that the underlying software algorithms and source code were publicly known.  In other words, I would allow the trade secret claim to move forward even if I were to find that certain aspects were publicly known at the time the misappropriation is alleged to have occurred.[10]

### 2.    The FAC plausibly alleges misappropriation.

The FAC also contains sufficient facts to support a plausible inference that the alleged trade secrets were misappropriated.  Plaintiff alleges that, in November 2016, Zenly's President and co-

---

[9] Defendants cite *Power Integrations, Inc. v. Silanna Semiconductor North America, Inc.*, No. 19-1292-LPS, 2020 WL 3508078 (D. Del. Jun. 29, 2020), but that case is distinguishable. There, the court held that a complaint's reference to "[Plaintiff's] Future Product Trade Secrets," "including but not limited to product specifications, product forecasts, definitions, designs, research and development, patentable technologies, particularized costing information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projections, and business plans relating to Power Integrations' new and future products" did not provide fair notice to the defendants about what they were accused of misappropriating.  *Id.* at *3. In contrast to that case, the FAC here lists three specific functionalities of a specific mobile application and it alleges that the trade secrets are related to those three functionalities and the underlying software components that make those functionalities work.  Unlike the open-ended and unbounded descriptions in *Power Integrations*, the FAC here provides detailed and specific descriptions of the three functionalities and their capabilities.

[10] While I conclude that it is appropriate to let the trade secret claims move forward at this stage, I recommend that Plaintiff be required to identify in detail each trade secret it claims was misappropriated (including disclosing all information regarding the alleged secret aspects of YouMap) before it is permitted to obtain discovery of any of Defendants' confidential proprietary information.  *Cf. SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 447 (Del. 2000).

founder asked Plaintiff if Zenly employees could participate in the beta test of YouMap.  Not receiving any response, six Zenly employees subsequently signed up for the beta test, many of them using false names and non-Zenly e-mail addresses.  At least one of those employees downloaded, installed, and used the beta version of YouMap.  And the FAC alleges that YouMap was able to be decrypted, reverse engineered, and analyzed using software tools.  In short, the FAC plausibly alleges that Zenly employees had access to the alleged trade secrets.

The FAC further alleges that, prior to that access, the Zenly App did not have the functionalities that are alleged to constitute the trade secrets.  It alleges that after the access, the Zenly app was updated to provide similar functionalities.  It also alleges that, after Snap's acquisition of Zenly, the trade secret functionalities were incorporated into the Snapchat app as part of a new mapping feature called Snap Map.  Those allegations are sufficient to plausibly allege misappropriation.

Defendants make much of the fact that the FAC does not definitively state how the individuals were able to gain access to YouMap's code and algorithms from downloading the beta version.  But that kind of detail is not required at the pleadings stage, particularly as such information would be in the hands of the defendants.  *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008) (recognizing that "[i]t is not common for a trade secret misappropriation plaintiff to know, prior to discovery, the details surrounding the purported theft").  What is alleged is sufficient to make it plausible that the individuals gained access to the trade secrets and shared them with their employer.

Defendants point out the improbability of Plaintiff's apparent contention that, within two days, Zenly employees hacked into the beta version of YouMap and incorporated what they learned into the Zenly app.  (D.I. 42 at 11.)  Defendants also point out that "beta testing does not

typically make underlying code available to beta testers" but "simply gives beta testers advance access to the standard user experience." (D.I. 38 at 22.) But the FAC alleges otherwise, and on a motion to dismiss the court looks for plausibility, not probability. *Iqbal*, 556 U.S. at 678. At this stage, the Court must accept the allegations in the FAC as true.

Defendant Zenly Inc. also contends that the trade secret claim against it should be dismissed because the FAC fails to distinguish between actions taken by Zenly Inc. and Zenly S.A.S. The FAC alleges that both Zenly entities acted together, in other words, that both entities did everything. (*See, e.g.*, FAC at 1 n.1.) That is enough at this stage. *Cf. Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447 (D. Del. 2018) ("[Plaintiff] is alleging that both of the Defendants did everything. The allegations must at this stage, be taken as true. Time will tell if plaintiff can prove them.").[11]

Defendant Snap contends that the FAC fails to plausibly allege that it had a role in any alleged wrongdoing by Zenly employees. Snap may be right, but I do not need to decide that here because the FAC also alleges that Snap later obtained and used the trade secrets that are alleged to have been misappropriated by Zenly. And, as plaintiff argues (D.I. 40 at 14 n.4), it is sufficient that Snap is alleged to use trade secrets that it knows were obtained through improper means. *See* 6 *Del. C.* § 2001(2)(b); 18 U.S.C. § 1839(5)(b); *see also Oakwood Laboratories*, 999 F.3d at 910 (recognizing that "courts have consistently interpreted the term 'use' in a broad manner under the UTSA" and adopting that "expansive interpretation"). (*See, e.g.*, FAC ¶¶ 103, 105, 109, 124, 126, 128.)

---

[11] Unlike under Rule 12(b)(2), a Plaintiff seeking to avoid dismissal under Rule 12(b)(6) need not demonstrate with affidavits or other competent evidence that its pleading states a claim against each defendant. Under Rule 12(b)(6), the court must accept the allegations in the pleading as true.

### C.     Breach of Contract (Count III)

Plaintiff does not dispute that Count III is asserted only against Individual Defendants. (D.I. 40 at 15-17.)   Because the Court lacks personal jurisdiction over Dancie, Loterman, and Fallourd, I need not address their argument that Count III fails to state a claim against them.

### D.     Tortious Interference with Contractual Relationship (Count IV)

In Count IV, Plaintiff alleges that Zenly and Snap caused Individual Defendants to breach their beta testing confidentiality obligations.  A claim of tortious interference with a contractual relationship requires "(1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of contract; (4) done without justification; and (5) which causes injury." *Kabbaj v. Google, Inc.*, No. 13-1522-RGA, 2014 WL 1369864, at *4 (D. Del. Apr. 7, 2014), *aff'd*, 592 F. App'x 74 (3d Cir. 2015).

I agree with Snap that the FAC fails to allege facts plausibly suggesting that Snap caused Zenly employees to breach their confidentiality obligations with You Map or that Snap even had knowledge of those agreements.

On the other hand, I do think that Count IV states a claim against Zenly Inc.  The FAC alleges that Zenly's co-founder and President asked You Map if Zenly employees could have access to the beta testing.  After receiving no response, six Zenly employees, some of whom used aliases and non-Zenly e-mail addresses, registered for beta testing and agreed to confidentiality, non-use, and nondisclosure obligations.  After at least one of those employees gained access to the beta version of YouMap, the Zenly App was updated to include new functionalities that, Plaintiff alleges, incorporate You Map's trade secrets.  Those allegations make it plausible that Zenly was

aware of the beta testing contract, that it caused its employees to breach it, and that Zenly's actions were both without justification and caused injury to You Map.[12]

Accordingly, the Court should dismiss Count IV as to Snap but let it move forward against Zenly Inc.

### E.      Infringement of U.S. Patent No. 10,616,727 (Count V)

The parties agree that Count V should be dismissed without prejudice and that Plaintiff should be granted leave to amend.  (D.I. 40 at 18.)

## IV.     CONCLUSION

For the reasons set forth above, I recommend that Defendants' Motion to Dismiss (D.I. 37) be GRANTED-IN-PART and DENIED-IN-PART:

1.      The Court should dismiss the FAC as to Zenly S.A.S., Dancie, Loterman, and Fallourd for lack of personal jurisdiction. Plaintiff's request for jurisdictional discovery should be denied.

2.      The Court should deny Zenly Inc. and Snap Inc.'s request to dismiss Counts I and II.

3.      The Court should dismiss without prejudice Count IV as to Snap Inc.  The Court should deny Zenly Inc.'s request to dismiss Count IV.

4.      The Court should dismiss Count V without prejudice.  Plaintiff should be granted leave to amend Count V within 21 days.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.   Any

---

[12] As noted above, the FAC alleges that both Zenly entities acted together, *i.e.*, that both entities did everything.  (*See, e.g.*, FAC at 1 n.1.)

objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: July 27, 2021

_____
The Honorable Jennifer L. Hall
United States Magistrate Judge